THE EEL RIVER RAILROAD COMPANY ET AL. *v.* THE
STATE, EX REL. KISTLER, PROSECUTING
ATTORNEY, ETC.

[No. 18,397. Filed May 18, 1900. Rehearing denied Nov. 23, 1900.]

ABATEMENT.—*Jurisdiction.—Waiver.*—Objection to the jurisdiction
of the court over the person of the defendant is waived, where the
plea in abatement on that ground is filed after a full appearance,
and a plea in bar is filed. *p. 439.*

CORPORATIONS.—*Railroads.—Domicil.*—For the purpose of determin-
ing the location of the domicil or residence of a domestic railroad
company resort may be had to those principles which are applied in
the case of natural persons. *p. 447.*

SAME.—*Railroads.—Domicil.*—Where a domestic railroad company
had surrendered its property and franchises, under a lease in perpe-
tuity, to another company, and ceased to do business as a railroad
company, maintaining no office or agency in the State, its legal res-
idence would be in the county where its principal office was located
when it ceased to do business, although the annual meetings of
stockholders were held in another county. *pp. 441-449.*

SAME.—*Railroads.—Process.*—Where a domestic railroad company had
no officer or agent in the State except an agent appointed to receive
and accept service of process, service in a county other than the one
in which the suit was brought was sufficient. *pp. 449, 450.*

RAILROADS.—*Leasing of Competing Road.—Statute Construed.*—Un-
der the act of March 3, 1865 (§§5209-5215 Burns 1894), authorizing
railroad companies to lease intersecting and continuous lines, a
railroad company is not permitted to surrender the control of its
corporate property under a lease in perpetuity to a competing com-
pany operating a parallel road. *p. 455.*

SAME.—*Forfeiture of Franchises.—Quo Warranto.—Sufficiency of In-
formation.*—In proceedings by the State in the nature of a *quo war-
ranto* against a domestic railroad company to declare a forfeiture
of its franchises on the ground that it has ceased to engage in the
business for which it was organized, and has surrendered its corpo-
rate property and franchises to a rival company in order to destroy
competition, the information need not aver that the acts complained
of were prohibited by statute, or that public injury resulted there-
from. *p. 456.*

PARTIES.—*Prosecuting Attorney as Relator.— Change of Venue.*—
Where a prosecuting attorney files an information in the nature of

Eel River R. Co. *v.* State, *ex rel.*

a *quo warranto* in the proper county, on his own relation, such prosecuting attorney remains the relator, though the venue is changed to another county. *p. 458.*

RAILROADS.—*Lease of Corporate Property to Rival Company.—Effect of Second Lease of Like Character.*—Where a railroad company leased its corporate property and franchises to a rival company in order to destroy competition, and afterwards a new lease of like character and for a like purpose was executed to the same company, the second lease had the effect of a new and substantive violation of the duties and obligations of the lessor. *p. 459.*

LIMITATION OF ACTIONS.—*Statute Does Not Apply to State.*—The statute of limitations does not, in civil actions, apply to the State. *p. 459.*

RAILROADS.—*Forfeiture of Franchise.—Receiver.*—In an action in the nature of a *quo warranto* against a railroad company to declare a forfeiture of its franchises, the court, in rendering judgment against such company, is authorized to appoint a receiver where it is asked for in the information. *p. 461.*

From the Howard Superior Court. *Affirmed.*

*W. V. Stuart, C. B. Stuart, E. P. Hammond, D. W. Simms, Henry Crawford, W. R. Crawford, J. C. Blacklidge, C. C. Shirley* and *W. H. Blodgett,* for appellants.

*W. L. Taylor,* Attorney-General, *W. A. Ketcham, G. S. Kistler, M. Winfield, M. Bell, W. C. Purdum, S. T. McConnell, A. G. Jenkines* and *G. C. Taber,* for State.

DOWLING, J.—This was a proceeding by information, in the nature of a *quo warranto*, filed in the Cass Circuit Court, by the prosecuting attorney of Cass county, against the Eel River Railroad Company, a domestic corporation, charging it with doing and omitting acts amounting to a surrender and forfeiture of its rights and privileges as a corporation, and demanding a judicial declaration of such surrender and forfeiture.

The Wabash Railroad Company, as the lessee of the railroad and property of the Eel River Railroad Company, and a participant in the alleged wrongful acts and omissions of the Eel River Railroad Company, was properly joined as a codefendant with that company. §269 Burns 1894; *Bittinger* v. *Bell,* 65 Ind. 445.

On a former appeal, by the defendants below, the judgment of the Fulton Circuit Court, to which the cause had been transferred upon a change of venue asked for by the defendants, was reversed, for the reason that the Cass Circuit Court, in which the suit was originally brought, had not obtained jurisdiction of the person of the Eel River Railroad Company. An attempt to bring the Eel River Railroad Company within the jurisdiction of the Cass Circuit Court had been made by issuing two writs of summons to the sheriff of said Cass county, requiring the said Company to appear to said action and to plead to the information therein on June 7, 1893, and causing the same to be served on the said company by reading to its secretary in the state of Massachusetts, and to one of its directors in the state of Michigan. On such former appeal, it was held by this court that the service of the writs, so made out of this State, was illegal, for the reason that the Eel River Railroad Company was organized under the laws of this State, and was therefore a resident of the State, and could not migrate. *Eel River R. Co.* v. *State, ex rel.,* 143 Ind. 231.

The mandate of this court was that the judgment of the Fulton Circuit Court be reversed, that the said court remand the cause to the Cass Circuit Court, and that the last named court sustain the motion of the Eel River Railroad Company to set aside the service of process. Subsequently, on the 12th day of February, 1896, an *alias* summons for the Eel River Railroad Company was issued to the sheriff of Cass county, and was returned not served, because that corporation was not found in Cass county, and had no officer or person authorized to transact its business residing in that county upon whom process could be served. Similar writs were issued on the same day, February 12, 1896, to the sheriffs of the counties of Miami, Wabash, Kosciusko, Whitley, Allen, Noble, and DeKalb, respectively, these being all of the counties in which and through which the railroad of the said Eel River Railroad Company was con-

structed; and to each of these writs a like return of "Not found," etc., was made.

An order for notice to the Eel River Railroad Company, by publication, under section one of an act approved December 21, 1858 (Acts 1858, p. 42) was next taken by the plaintiff below.  The Eel River Railroad Company thereupon entered a special appearance to the action, and moved to set aside the order of publication, on the ground, among others, shown by affidavit filed on behalf of the said company in support of its motion, that, prior to February 12, 1896, and ever since that date, one William V. Troutman, a citizen of the State of Indiana, residing at Butler, in DeKalb county, Indiana, was, and had been, and then remained the regularly appointed and constituted general agent of the Eel River Railroad Company, upon whom any process issued against it could be served, and with like effect as if the service had been on the president or directors of said company.  An *alias* summons for the Eel River Railroad Company was then issued to the sheriff of DeKalb county, who made return thereto, showing that he had served the same on the said Eel River Railroad Company by reading it to William V. Troutman, the general agent of the said company, there being no chief officer, or other higher officer of the said corporation found in said DeKalb county, and by delivering to the said Troutman, as such general agent, a copy of the writ.

The motion of the Eel River Railroad Company to strike out the order for publication was overruled, and proof of publication of a notice to that company to appear to and answer the information was duly made.

An amended information having been filed by the plaintiff below, the Eel River Railroad Company filed its answer in abatement, properly verified, denying the jurisdiction of the Cass Circuit Court over its person.  To this plea, the plaintiff below replied in two paragraphs, the first being special in its character, and the second a denial of the matters stated in the plea.

At this stage of the proceedings, the Wabash Railroad Company also filed an answer in abatement. Upon the application of the Eel River Railroad Company, the venue was changed to Howard county, and the cause was transferred to the Howard Circuit Court.

On motion of the plaintiff below, the answer of the Wabash Railroad Company in abatement, was stricken from the files, for the reason that it was filed too late, and after divers steps in the cause taken by that defendant.

A demurrer to the first paragraph of the reply to the answer of the Eel River Railroad Company in abatement was filed, but the record fails to show what disposition was made of it. We must presume that it was overruled.

The issues upon the plea in abatement filed by the Eel River Railroad Company were submitted to a jury for trial, and, at the request of both the parties, the jury were directed to return a special verdict in the form of answers to interrogatories framed under the direction of the court.

On the return of the special verdict, the Eel River Railroad Company moved for judgment in its favor, and its motion was overruled. A motion by the Eel River Railroad Company for a new trial was also made and overruled. Judgment was thereupon entered in favor of the plaintiff upon the issues tried. At this point, the cause was, for some reason not disclosed by the record, but without objection by any of the parties, transferred to the Howard Superior Court.

After the removal of the cause to the Howard Superior Court, a motion was made by the Eel River Railroad Company to dismiss the action for the want of a proper relator. Pending this motion, George S. Kistler, who had been reelected prosecuting attorney for the judicial circuit composed of the county of Cass, was substituted as the relator, and the motion to dismiss was overruled.

Each defendant filed a demurrer to the amended information, and these demurrers were overruled.

The Eel River Railroad Company answered in four paragraphs, and the Wabash Railroad Company filed its separate answer. The record fails to show that any reply was filed to the answer of either defendant.

The cause was tried by a jury and a general verdict was returned for appellee, with answers to numerous interrogatories filed by the parties respectively. A motion by the appellants for an order requiring the jury to answer the fifteenth and sixteenth interrogatories was overruled. Separate motions by the appellants for a new trial and for judgment on the answers to the interrogatories were made and overruled. Motions by the Eel River Railroad Company for a *venire de novo,* and in arrest, were overruled.

Appellee moved for the appointment of a receiver, and the motion was sustained.

Judgment was rendered upon the verdict that the franchises of the Eel River Railroad Company be, and that the same were, forever forfeited and annulled; that the Wabash Railroad Company was unlawfully in the possession of the corporate property of the Eel River Railroad Company, and that it was unlawfully exercising the franchises of that company; that the Eel River Railroad Company and the Wabash Railroad Company, and each of them, be ousted and excluded from the said Eel River Railroad, its powers, franchises, property, and corporate rights, and from the possession and enjoyment of the same; and that the Eel River Railroad Company be dissolved.

It was further adjudged that a receiver be appointed to take possession of the said Eel River Railroad Company, its railroad, property, and franchises, to receive the assets of the said company, and to sell and dispose of the same under the orders of the court, and in accordance with the law in such cases. A receiver was appointed by the court, and the person so appointed gave bond and qualified. The judgment defined the specific powers and duties of the receiver. He was authorized to seize and take possession of all the

property of the Eel River Railroad Company, including its railroad, rolling-stock, books, papers, etc., and to hold the same subject to the further orders of the court. He was empowered to bring all necessary suits in his own name as such receiver for the recovery of the property, assets, rights, and franchises of the Eel River Railroad Company, and for the preservation of the same, and the Eel River Railroad Company and the Wabash Railroad Company were ordered to deliver to the receiver all the property of the Eel River Railroad Company in their possession, or under their control, or in the possession or under the control of either of them.

Motions to modify the judgment were made by the appellants, and were overruled.

The errors assigned and discussed upon this appeal are the following: (1) The court erred in striking out the answer in abatement of the Wabash Railroad Company; (2) the court erred in overruling the motion of the Eel River Railroad Company for judgment in its favor on the special verdict returned on the issue upon its answer in abatement; (3) the court erred in overruling appellants' several demurrers to the amended information; (4) the court erred in overruling appellants' motions for judgment on the special findings of the jury; (5) the court erred in overruling appellants' separate motions for a new trial; (6) the court erred in appointing a receiver; (7) the court erred in refusing to modify the judgment.

The supposed errors so assigned will be considered in their order:

(1) Did the court err in striking out the answer of the Wabash Railroad Company in abatement of the action? Pleas in abatement of the writ or action being dilatory, and tendering no issue as to the merits of the controversy, have always been regarded by the courts with some degree of disfavor, and the rules governing them enforced with much strictness. In all transitory actions, objections to the juris-

diction of the court over the person of the defendant may
be waived, and, unless such objections are made promptly,
and without delay, a waiver will be presumed.   A full ap-
pearance to the action for any purpose, other than to present
such objection by way of motion or plea, operates as a
waiver of the objection, and confirms the jurisdiction of
the court over the defendant.   Jurisdiction of the person,
once lawfully acquired, continues through all subsequent
proceedings in the cause. 1 Chitty on Pleading 457; Steph-
en on Pleading (9th Am. ed.), 352; Gould's Pleading (2nd
ed. 1899), 40; §368 Burns 1894, §365 R. S. 1881; *Watts*
v. *Sweeney,* 127 Ind. 116; *Newell* v. *Gatling,* 7 Ind. 147;
*Brink* v. *Reid,* 122 Ind. 257; *Ford* v. *Ford,* 110 Ind. 89;
*Sunier* v. *Miller,* 105 Ind. 393; *Gilbert* v. *Hall,* 115 Ind.
549; *Slauter* v. *Hollowell,* 90 Ind. 286; *Wabash, etc., R. Co.*
v. *Lash,* 103 Ind. 80; *Singleton* v. *O'Blenis,* 125 Ind. 151;
*Black* v. *Thompson,* 107 Ind. 162; *Kinser* v. *Dewitt,* 7 Ind.
App. 597; *Keiser* v. *Yandes,* 45 Ind. 174; *Needham* v.
*Wright,* 140 Ind. 190; *Collins* v. *Nichols,* 7 Ind. 447;
*Kelley* v. *State,* 53 Ind. 311; *Ward* v. *State,* 48 Ind. 289;
*Indianapolis, etc., R. Co.* v. *Ott,* 11 Ind. App. 564.

The Wabash Railroad Company was regularly served
with a summons requiring it to appear in the Cass Circuit
Court on a day named, and on the 7th day of June, 1893, by
its attorneys, that company entered a full appearance to the
action.   On the 12th day of June, 1893, it applied for a
change of venue, and its motion was sustained.   October
11, 1893, it filed a motion to strike out parts of the com-
plaint.   October 12, 1893, it demurred to the complaint.
February 6, 1894, it filed its separate answer in bar.   Other
steps were subsequently taken by the Wabash Railroad Com-
pany, but it is not necessary to set them out.   On May 1,
1896, nearly three years after it had entered its full ap-
pearance in the cause, the Wabash Railroad Company filed
its answer in abatement, then for the first time calling in
question the jurisdiction of the court over its person.

It is entirely clear that this objection was not available to the Wabash Railroad Company when made. After a full appearance, the filing of divers motions, and a plea in bar, this appellant must be conclusively presumed to have waived any objection to the jurisdiction of the court, and to have fully submitted itself to that jurisdiction.

The reversal of the judgment of the Fulton Circuit Court on the ground that the Cass Circuit Court had not jurisdiction of the person of its codefendant, the Eel River Railroad Company, thereby vacating the proceedings of the Fulton Circuit Court, did not, in our opinion, relieve the Wabash Railroad Company from the legal effect of the steps taken by it in the cause. On that appeal no question was made or decided as to the jurisdiction of the court over the Wabash Railroad Company. It is also to be observed that the full appearance of this appellant was made in the Cass Circuit Court, and its application for a change of venue from that county took place prior to the removal of the cause to Fulton county, and long before the proceedings in the Fulton Circuit Court which were vacated by the reversal of the judgment. These facts, in connection with the long delay, in interposing the objection, under the settled rules of pleading and practice, wholly disabled the Wabash Railroad Company to assert a want of jurisdiction of the Cass Circuit Court over its person, and consequently the court did right in striking from the files its answer in abatement. *Brink* v. *Reid,* 122 Ind. 257; *Watts* v. *Sweeney,* 127 Ind. 116, 22 Am. St. 615.

(2) Was the Eel River Railroad Company entitled to a judgment in its favor upon the special verdict upon the issue made by its answer in abatement and the reply thereto? The determination of this question depends upon the facts found as to the legal residence or domicil of the Eel River Railroad Company at the time of the commencement of the suit; the capacity of the supposed agent and representative of that corporation on whom the summons

was served to receive, and be subject to service of process on behalf of the corporation; and the place and manner of the service of the writ.

The material parts of the special verdict were as follows: The Detroit, Eel River & Illinois Railroad Company was a corporation organized under the laws of this State to build and operate a railroad from Logansport, in Cass county, Indiana, eastward through the counties of Cass, Miami, Wabash, Kosciusco, Whitley, Allen, Noble and DeKalb, and it was so constructed. The railroad and other property of the Detroit, Eel River & Illinois Railroad Company was afterwards sold under a decree of foreclosure rendered by the Cass Circuit Court. In 1877 a new corporation, known as the Eel River Railroad Company, was organized under the laws of the State of Indiana, for the purpose of purchasing the railroad and other property of the Detroit, Eel River & Illinois Railroad Company, and the corporation, so organized, after acquiring the said railroad property, operated the railroad so purchased until the fall of 1887. The road was equipped with rolling-stock and machine shops. The general offices and general shops of the Detroit, Eel River & Illinois Railroad Company, and of its successor, the Eel River Railroad Company, were located at Logansport, Cass county, the western terminus of said railroad, and not elsewhere. In the fall of 1879, the Eel River Railroad Company, by contract with the predecessor of the Wabash Railroad Company, surrendered the possession of its road, rolling-stock, and equipment to the said Wabash Railroad Company, discharged all of its agents and employes in the State of Indiana, and, by the order of its board of directors, removed its general offices, books, papers, and other documents from Logansport, Cass county, Indiana, to the city of Detroit, in the state of Michigan, from whence they were afterwards removed to Boston, Massachusetts. The Eel River Railroad Company has had no office, officer, or employe except William V. Troutman in

the State of Indiana since said contract and surrender in 1879. On October 6, 1887, the Eel River Railroad Company entered into a lease with the Wabash Western Railway Company, of the state of Missouri, whereby the former company leased to the latter, in perpetuity, its railroad property, including rolling-stock, equipment, and franchises. The Wabash Western Railway Company afterwards consolidated with certain other railroads in Illinois, Indiana, and Ohio, under the name of the Wabash Railroad Company, and the said Wabash Western Railway Company, and its successor, the Wabash Railroad Company, have been in the absolute possession and control of the Eel River Railroad, its rolling-stock, equipment, and franchises, and have been operating said road since October 6, 1887. The Eel River Railroad Company has done no business or corporate act as a railroad company in the management and control of its property in the State of Indiana, since the fall of 1880, except to hold annual meetings of the stockholders at Butler, in DeKalb county. At these meetings nothing was done further than to reëlect directors, and, at the meeting of November 7, 1888, to ratify the said lease of October 6, 1887. Since October 6, 1887, the Eel River Railroad Company has done nothing more than to maintain its corporate existence for the purpose of collecting the rentals reserved in the said lease of October 6, 1887, and distributing the same to its stockholders. The last general offices of the Eel River Railroad Company, prior to 1880, were at Logansport, Cass county, Indiana, and since that date it has had no office in this State. Previously to February 27, 1896, and since the removal of its general offices from Logansport, Indiana, the Eel River Railroad Company had not filed, or caused to be filed, in the clerk's office of any county, along the line of its road, into which or through which the railroad runs, the appointment of any person as agent, nor from the date of such removal of its offices to February 22, 1896, had it any officer, director, agent, or

representative in the State of Indiana.  On February 22, 1896, one William V. Troutman, who was then and there an agent of the Wabash Railroad Company, filed in the office of the clerk of DeKalb county, at Butler, in said county, his appointment as general agent of the Eel River Railroad Company.  Said Troutman has ever since remained an agent of the Wabash Railroad Company.  He has been paid by that company, and not by the Eel River Railroad Company.  He has performed no services for the Eel River Railroad Company.  He has no duties as the agent of that company.  He has had the possession of no books, papers, or property of that company, and the object of his appointment was to defeat the jurisdiction of the Cass Circuit Court.  There has been no appointment by the said Eel River Railroad Company of any other agent, or of any other agent to receive process, at any time since 1879, in any of the counties into which or through which the Eel River Railroad Company's railroad passes.  On the 12th day of February, 1896, a summons for the Eel River Railroad Company in this cause was issued to the sheriff of Cass county, by the order of the Cass Circuit Court, and came to the hands of such sheriff on the 13th day of February, 1896, upon which the said sheriff made return February 13, 1896, as follows: "I hereby certify that I have not served this summons because the within named Eel River Railroad Company is not found in my bailiwick, and that said corporation, the Eel River Railroad Company, has no officer or person authorized to transact its business residing in said Cass county, where said corporation has been located, and has exercised its powers, upon whom process can be served."  On the 13th day of April, 1896, by the order of the Cass Circuit Court, a summons for the defendant, the Eel River Railroad Company, was issued to the sheriff of DeKalb county, and was duly served on William V. Troutman as the general agent of that company April 17, 1896.  Writs of summons were also issued to the sheriffs of Miami,

Wabash, Whitley, Kosciusco, Allen, Noble, and DeKalb counties, respectively, on the 12th day of February, 1896, each of which writs was returned with the indorsement, "No officer or agent found of the defendant, the Eel River Railroad Company, upon whom summons could be served." The Wabash Railroad Company, since 1889, has continuously had and maintained, in the county of Cass, offices and agents for the transaction of its business, and for twenty years it and its predecessors have had nineteen miles of railroad running through the county of Cass, in the State of Indiana, and said Wabash Railroad Company, since 1889, continuously has kept and maintained offices in the city of Logansport for use and occupation in the transaction of its business. One Charles G. Newell was the agent of the Wabash Railroad Company in Logansport, Indiana, for the transaction of its business at that point, in May, 1893, when the summons in this case for the said Wabash Railroad Company was served upon him. The offices of the Wabash Railroad Company at Peru, Indiana, are under the control and direction of the principal office of that company at St. Louis, Missouri. At and after May 1, 1893, and down to the time of the filing of the answer in abatement in this action, the Eel River Railroad Company did not at any time have or maintain its principal office or place of business in Cass county, Indiana; it did not during any part of such period have an agent located at, or residing in, said Cass county, nor did it, during such period, transact any business in said Cass county, or maintain any office therein. No meeting of its stockholders or directors was held in said Cass county between May 1, 1893, and the date of the filing of the plea in abatement herein. At no time in that interval was the Eel River Railroad Company operated from any office or agency in Cass county. Since 1881, the stockholders meetings of that company, each year, for the election of directors, and the transaction of other business, were held at Butler, DeKalb county, Indiana, and from 1881

to 1896 such meetings were convened upon notices published by the secretary in newspapers in each county where any stockholders resided, and in pursuance of notices forwarded by the secretary, by mail, to every stockholder of the corporation. The change in the place of holding the annual meetings of the stockholders of the Eel River Railroad Company from Logansport, in Cass county, to Butler, in DeKalb county, was made by resolution adopted at the annual stockholders' meeting held at Logansport, November 6, 1880, and thereafter no such meeting was held in Cass county. Annually, since 1880, the stockholders of said Eel River Railroad Company have convened at Butler, DeKalb county, and have elected directors of said company. From May 1, 1893, and from thence continuously to the time of the filing of the answer in abatement, the principal office and place of business of the Wabash Railroad Company, in Indiana, was at Peru, in Miami county. During this period, one Emmet A. Gould was the division superintendent of the Wabash Railroad Company, in charge of all the agents employed, and persons engaged in the operation of any part of said railroad in the State of Indiana, with authority to employ and discharge such employes. All trains on said railroad were moved upon instructions from the office of the said division superintendent. The offices of the train despatcher of said Wabash Railroad Company in Indiana, road master, resident engineer, division superintendent of bridges, and master of transportation were maintained and operated at Peru, in Miami county, and the highest officer of said Wabash Railroad Company, located at, and residing in, Cass county, was a local station agent, the said Wabash Railroad being managed from the office of the division superintendent located at Peru, Miami county.

It is indispensably necessary to the exercise of the supervisory authority of the State over railroad corporations created by it, and owning property and enjoying corporate franchises within its territory, that every such

corporation should be regarded as having a domicil, or place of residence, within the State for the purposes of jurisdiction, litigation affecting its rights and duties, and the taxation of its personal property. When questions arise touching the location of such domicil or residence, for the purpose of determining the same, resort may be had to those principles which are applied in the case of natural persons. Among the most familiar of these are the rules that every citizen of the State has a residence somewhere within one of the counties of the State, in which alone he can claim certain political and civil rights, and in which he must be sued in transitory actions in which he is the sole resident defendant; that a legal residence once established remains until a new one is acquired; and, that a purpose to change such residence, unaccompanied by actual removal or change of abode, does not constitute a change of domicil. *Sears* v. *City of Boston,* 1 Metc. 250; *Culbertson* v. *Board, etc.,* 52 Ind. 361; Thompson on Corp. §7999; *Buckley* v. *Inhabitants of Williamstown,* 3 Gray 495; 5 Am. & Eng. Ency. of Law (1st ed.), 865, and notes; Jacobs on Domicil, §§81, 82, 91, 93, 104, *et seq.*

The visitation of civil corporations is by the government itself, through the medium of the courts of justice, which exercise common law jurisdiction over all such corporations by writ of *mandamus,* and by information in the nature of *quo warranto.*. The State which creates the corporation has the right, at all times, to inquire, through the courts, into abuses of its franchises by a body politic, and, in case of non-user or misuser, by the same medium to impose the penalty of forfeiture according to the course of the common law, or in pursuance of statutes applicable to such cases. 2 Kent's Com. 300, 305. It is, therefore, one of the duties which a domestic corporation owes to the State to maintain a place of residence, or domicil, at which the sovereign may call upon it to show cause why its franchises should not be seized, and the corporation dissolved; and where a disposi-

tion is manifested to neglect or evade this obligation, or the management of the corporate business is of such a character as to render the location of such residence doubtful, the courts will not nicely weigh the evidence when compelled to determine which one of several counties into which, or through which, the railroad passes, is the legal domicil of the corporation. Under such circumstances, the corporation should not be permitted to take advantage of the uncertainty created by its own acts, and a very slight preponderance of the evidence should be held sufficient to sustain the jurisdiction of the court over the person of the defendant.

The general rule of the statute is that an action shall be commenced in the county where the defendant, or one of the defendants, has his usual place of residence. §314 Burns 1894. This rule applies as well to corporations as to natural persons. The statutory exceptions to it authorize the bringing of the suit, under some circumstances, in counties other than that in which the defendant has his, or its, usual place of residence, but they do not prevent the bringing of the suit in the county of such usual residence.

The controlling facts as to the usual place of residence of the Eel River Railroad Company, found by the special verdict, are that, so long as that corporation held the possession of and operated its railroad, its principal offices and place of business were at Logansport, in Cass county, Indiana, the western terminus of its road, and that at no time since the Eel River Railroad Company transferred the use and possession of its railroad to other corporations had it any office for the transaction of its business as a railroad company in any county in the State of Indiana. The place of the principal office of a railroad corporation, where its business is transacted, and where its books and records are kept, is generally considered the residence of such corporation.

The fact that after the surrender of the railroad, its prop-

erty, and business, to another railroad company, the annual meetings of the stockholders of the Eel River Railroad Company were held at Butler, in DeKalb county, and that the company, for the purpose of defeating the jurisdiction of the Cass Circuit Court, after the commencement of this action, maintained a nominal agent there, without an office, without a salary, and without duties, except to receive service of process, does not, in our opinion, change the effect of the findings of fact as to the location of the principal offices and place of business at Logansport, in Cass county. *Platt v. New York, etc., R. Co.,* 26 Conn. 544; *Connecticut, etc., Ins. Co. v. Spratley,* 172 U. S. 602, 19 Sup. Ct. 308, 43 L. ed. 569.

The appellant, the Eel River Railroad Company, was a domestic corporation. Its railroad was wholly within the State of Indiana, yet, when this proceeding was instituted, it had no office or officer, agent or agency, in any of the eight counties in which, and through which, its road was constructed. Writs issued to the sheriffs of all of these counties were returned "Not found," because there was no officer or person in any one of them on whom service could be made. So long as the corporation attempted to carry out the purposes for which it was organized, so long as it engaged in the business of operating its railroad, it maintained its prinicpal offices and place of business at Logansport, in Cass county, and its legal residence was, therefore, in that county. No new residence having been acquired by the company, we think that the residence so established should be held to have continued, and that the action was properly brought in Cass county. The action having been properly brought in that county, the statute expressly authorized service of the summons in any other county in the State where any person, authorized to transact business in the name of the corporation, officer, or agent, could be found. §318 Burns 1894. William V. Troutman, having been appointed the agent of the company in DeKalb county "to

receive and accept service of process with like effect as if served upon the president and directors of the Eel River Railroad Company," we hold that service of the summons on him in DeKalb county was sufficient and legal service upon the company in the action pending in the Cass Circuit Court. We conclude, therefore, that the motion of the Eel River Railroad Company for judgment in its favor upon the special findings was properly overruled.

(3) Was there error in overruling the demurrers to the amended information? Omitting the formal commencement, the material facts alleged were the following: That, on the 4th day of December, 1877, the Eel River Railroad Company was incorporated under the laws of the State of Indiana, for the purpose of owning, operating, and maintaining a railroad lying wholly within said State, and extending from Logansport, in Cass county, eastward, through the counties of Miami, Wabash, Kosciusko, Whitley, Allen, and Noble, to the town of Butler, in DeKalb county, in said State, a total length of about ninety-four miles, and formerly known as the Detroit, Eel River & Illinois Railroad. That, by virtue of such incorporation, the Eel River Railroad Company was authorized to, and did, take possession of the said railroad, its property, and franchises, and held and operated the same. That at the time said Eel River Railroad Company took possession of said property, said Railroad was fully constructed, completed, and equipped with ninety-four miles of main track, with side-tracks, switches, depots, stations, roundhouses, and machine shops, located at Logansport and Butler, with engines and cars sufficient to do a large passenger and freight business, and was fully equipped for the accommodation of the public along the line of said railroad. That, on or about October 6, 1887, said Eel River Railroad Company executed and delivered to the Wabash Western Railway Company a lease of said Eel River Railroad for a period of ninety-nine years, renewable in like periods, at the option of said lessee, for-

ever. That, in order to keep the public authorities in ignorance of said lease, its terms and conditions, and of the utter abandonment of its corporate duties and functions by the said Eel River Railroad Company, said lease was never recorded in any county, in the State of Indiana, but was withheld from the records and was unknown to the public authorities until just before the institution of this suit. That, by the terms of the said lease, the Wabash Western Railway Company was given full and exclusive power, right, and authority, to use, manage, and operate said Eel River Railroad, its property, franchises, etc., in the place and stead of the Eel River Railroad Company, with the exclusive right to collect and receive such tolls as said lessee might, from time to time, establish, and all rents, issues, and profits arising from the possession and operation of the said railroad, etc. That, by the said lease, the Wabash Western Railway Company covenanted to maintain and operate said railroad at its own expense as if it were the owner thereof, and to perform all the duties and obligations of the Eel River Railroad Company. That, immediately upon the execution of the said lease, and in compliance with the terms thereof, the Eel River Railroad Company voluntarily surrendered the whole of its said railroad, property, and franchises, to said Wabash Western Railway Company, discharged all of its servants, agents, and employes, and finally ceased thereafter to operate said Eel River Railroad, or to exercise the franchises thereof. That the president of the said Eel River Railroad Company, its secretary and treasurer live in Massachusetts, and its directors in Massachusetts, Michigan, and other states, but none of them in the State of Indiana; and that since the execution of the said lease the said Eel River Railroad Company has not had any officer, director, agent, or employe, resident in the State of Indiana, upon whom process could be served, and that the sole and only business now conducted by the Eel River Railroad Company is the re-

ceipt and division of the semiannual rental paid to it under the said lease, which business is conducted in the office of its secretary and treasurer, in the city of Boston. That, immediately after the execution of said lease, and by virtue thereof, the said Wabash Western Railway Company took possession of the said Eel River Railroad, etc., and held and kept possession thereof until July, 1888, on or about which time the Wabash Western Railway Company and certain other railroad corporations operating different portions of the Wabash line of railroad became, and were, consolidated into one new corporation, organized under the laws of the State of Indiana, known as the Wabash Railroad Company. That the Wabash Western Railway Company, the original lessee, was a railroad corporation, organized under the laws of Missouri, and owned no railroad in Indiana. That at the time of the execution of the said lease it was a part of the contemplated plan to consolidate several railroad companies in Missouri, Illinois, Indiana, Ohio, and Michigan under the name of the Wabash Railroad Company, and as a part of such plan said lease was executed to said Wabash Western Railway Company, so that said consolidated company, when formed, might acquire or absorb said Eel River Railroad, a competing line with the main line of the Wabash Railroad Company, eastward. That said plan of consolidation was fully carried out, and the Wabash Western Railway Company turned over to the Wabash Railroad Company, and said latter company took possession of all the property, real and personal, and franchises of the Eel River Railroad Company, all of said facts as to such consolidation and the purposes of the said lease being known to the said Eel River Railroad Company. That said Wabash Railroad Company, by virtue of the said lease, and not otherwise, entered upon and took possession of the said railroad and property with the consent of the said Eel River Railroad Company, and has ever since exer-cised the functions and franchises of said Eel River Rail-

road Company, and received the tolls and profits thereof, and that it still continues to hold the same without any authority of law. At the time the officers, agents, and employes of the said Eel River Railroad Company left the State of Indiana, the principal offices and shops of the said company were located at Logansport, Cass county, in said State, where its superintendent and general manager resided, and from which point the said road was operated. That since said offices were abandoned, said company has performed no corporate acts within the State of Indiana. That, before the commencement of this suit, attempts were made to hold annual meetings of stockholders of the Eel River Railroad Company at Butler, in DeKalb county, Indiana, but that said meetings were void for want of proper notice, and because they were held under orders made by the board of directors in the state of Massachusetts, and not otherwise. That the said Wabash Railroad Company owns and operates a competing line of railroad extending from Kansas City, Missouri, and other western points, to Toledo, Ohio, whose main line parallels the said Eel River Railroad through its entire length, and whose interests are antagonistic and adverse to the Eel River Railroad Company. That, since coming into the possession of the said Eel River Railroad, the said Wabash Railroad Company, with the permission of the said Eel River Railroad Company, has used the same to destroy its competition, and as a feeder for its own main line, operating it for the benefit of its own traffic, and dwarfing and ignoring the proper business of the Eel River Railroad Company, and the accommodation of its patrons along its line. That the Wabash Railroad Company, with the consent of the Eel River Railroad Company, has abandoned that portion of its road extending from Logansport to Chili, a distance of twenty-two miles, has torn up and destroyed the switches and side-tracks, permitted its track, buildings, and bridges to go to decay, has dismantled and destroyed the roundhouse

and machine shops at Logansport, and removed them to Peru, on its own main line, and intends to dismantle and destroy the roundhouse and machine shops at Butler, and to remove them to its own main line. That the said Eel River Railroad was projected and built as a competing line of the Wabash Railroad, and that for the purpose of obtaining such competing line, the people along the line of said railroad voted, and contributed, $300,000 in aid of its construction.

It was further charged that the Wabash Railroad Company holds possession of the Eel River Railroad, its property and franchises, without right; that it has usurped, intruded into, and unlawfully exercised the corporate franchises of said company, and is unlawfully operating said railroad, and exercising such franchises. Prayer that the charter and franchises be declared forfeited, that the defendants be ousted from said railroad and franchises, and that a receiver be appointed to take possession of said railroad, its property, etc., and wind up the affairs of the said Eel River Railroad Company.

The acts and omissions for which a forfeiture of the franchises of the Eel River Railroad Company and a dissolution of that corporation are demanded are these: The execution of a lease to the Wabash Railroad Company for a term of ninety-nine years, with the right of perpetual renewal at the option of the lessee; the surrender and abandonment of the possession and control of its railroad by the Eel River Railroad Company; the closing of all its offices, and the discharge of all its agents and employes; the destruction of twenty-two miles of its railroad from Logansport to Chili, with all of the side-tracks, switches, and bridges on that part of its line; the dismantling and removal of its roundhouses, and machine shops; the total diversion of the railroad from the purpose of its construction as a competing line with the Wabash Western Railway Company and the Wabash Railroad Company, and its conversion into an interrupted, subordinate, and tributary road.

It is insisted on behalf of the appellants that the leasing of the railroad was authorized by the act of March 3, 1865, §5209-5215 Burns 1894, but as that act, in terms, applies to intersecting and continuous lines only, and to such railroads as have not been equipped and operated in whole or in part, it does not sustain the argument of the appellants. It is also contended that the lease, and subsequent surrender and abandonment of the control of its railroad by the Eel River Railroad Company, were sanctioned by the general legislative policy of the State, but we fail to find in any act of the legislature anything which countenances so complete a departure from the objects for which the Eel River Railroad Company was organized, and for which its railroad was constructed. The phrase "legislative policy" is vague at best, and can seldom be regarded as a substantial basis for important legal rights. In the absence of more definite authority, it cannot be held to sanction deliberate violations of the law, omissions of duty to the public and the State, vast and dangerous extensions of corporate privileges, and an abandonment of the objects for which the corporation was created.

If it were true, as appellants affirm, that the corporation did not impliedly agree with the State that it would operate the railroad with its own employes, and never transfer its franchises or property, still, we think it clear that it did impliedly agree that it would not, without the permission of the State, destroy a part of its line of railroad, change its terminal points, and turn over to a rival and competing company the possession, control, and exclusive management of the whole of its corporate property, and the enjoyment of all its corporate franchises.

Although incorporated under the act of March 3, 1865, nevertheless it was subject to the general provisions of the laws of this State, as far as it is possible to construe them together, and there is nothing in the act of March 3, 1865, which relieved the Eel River Railroad Company from the

ordinary obligations to the State and to the public to which all such corporations are subject.

It was not necessary that the information should aver that the delinquent company had done any act in contravention of a prohibitory statute, or of a statute imposing a definite penalty. A forfeiture of corporate existence and franchises may result, although no statute in express terms enjoins or prohibits the acts or omissions complained of. While certain specific acts and omissions may, by statute, be made causes of forfeiture of the charter or franchises of corporate bodies, yet it is generally recognized that misuser, and non-user, of such franchises, even where the specific offenses are not particularly defined by statute, are sufficient grounds for proceedings for such forfeiture and dissolution. *State Bank* v. *State,* 1 Blackf. 267, 12 Am. Dec. 234; *People* v. *Kingston, etc., R. Co.,* 23 Wend. 193; *People* v. *Bristol, etc., Co.,* 23 Wend. 222; *Thompson* v. *People,* 23 Wend. 537; *People* v. *Hillsdale, etc., Co.,* 23 Wend. 254; *People* v. *Bank,* 6 Cow. (N. Y.) 216; *State* v. *Seneca County Bank,* 5 Ohio St. 171; *St. Louis, etc., Co.* v. *Sandoval, etc., Co.,* 116 Ill. 170, 5 N. E. 370; *Ward* v. *Sea Ins. Co.,* 7 Paige (N. Y.) 294; *In Re Jackson Ins. Co.,* 4 Sandf. Ch. (N. Y.) 596; 5 Thompson on Corp. §6618; *Dartmouth College* v. *Woodward,* 4 Wheat. 519, 4 L. ed. 629; Morawetz on Priv. Corp., §§1114, 1115; *New York, etc., R. Co.,* v. *Newman,* 17 How. 30, 15 L. ed. 27; *Territt* v. *Taylor,* 9 Cranch 52, 3 L. ed. 650; *State* v. *Minnesota R. Co.,* 36 Minn. 246, 30 N. W. 816; *State* v. *Portland, etc., Co.,* 153 Ind. 483; *Pennsylvania R. Co.* v. *St. Louis, etc., Co.,* 118 U. S. 290, 630, 6 Sup. Ct. 1094, 7 Sup. Ct. 24, 30 L. ed. 83, 284; *Board, etc.,* v. *Lafayette, etc., R. Co.,* 50 Ind. 85; *Thomas* v. *West Jersey R. Co.,* 101 U. S. 71, 83; Elliott on Railroads, §§48, 49, and §50, note 5; *State, ex rel.,* v. *Atkinson, etc., R. Co.,* 24 Neb. 143, 38 N. W. 43, 2 L. R. A. 564, 8 Am. St. 164, and notes.

It may be conceded that not every act in excess of corporate capacity will justify a forfeiture; but in the present case a much more serious charge is made. A lease in perpetuity to a competing company; a total surrender of the railroad, its property and franchises; an abandonment of the control and management; the wrecking and destruction of a considerable part of the line of the railroad; the dismantling and removal of roundhouses and machine shops; the closing of all offices and agencies; the discharge of all employes, agents, and officers in this State; the removal of all books and papers relating to the business of the corporation from the State of Indiana; and the management of the affairs of the company by the officers of a competing line of railroad in such manner as to promote the interests of such competing line without regard to the interests or duties of the line so controlled,—constitute a state of facts wholly different in character and legal effect from those acts in excess of corporate capacity which have been held insufficient to authorize a forfeiture.

It is further said by counsel for appellants that the lease was not prohibited by law, nor wrongful in itself, and that the information contains no averment that public injury resulted from the acts complained of. In answer to this, it is sufficient to say that the lease to the competing company was not authorized by any statute; that its execution and the consequent abandonment of its railroad by the Eel River Railroad Company were against public policy; and that from the facts averred in the information injury to the public may be conclusively presumed. Elliott on Railroads, §49; *Board, etc.,* v. *Lafayette, etc., R. Co.,* 50 Ind. 85; *East St. Louis, etc., R. Co.* v. *Jarvis,* 92 Fed. 735, 34 C. C. A. 639; *Central, etc., Co.* v. *Indiana, etc., Co.,* 98 Fed. 666, 39 C. C. A. 220.

The execution of the lease to the Wabash Railroad Company and the disability resulting from such lease rendered the lessor company incapable of performing its duties to the

State and to the public, and to that extent were violations of its charter, and breaches of the implied conditions upon which its right to exist depended. These facts, in connection with the other grounds of forfeiture alleged in the information, consisting of a total, and apparently final, suspension of the business and functions of the Eel River Railroad Company; the abandonment of all means and agencies by which that business was carried on, and those functions performed; the acquiescence of the company in the destruction of a considerable portion of its railroad and other property; and its attempted migration from the State, were, as we think, sufficient in law to sustain a judgment of ouster and a dissolution of the corporation.

Objection is made that the action was not brought in the proper county, but, for the reasons already given in this opinion, we think the suit was properly commenced in the Cass Circuit Court.

It is also insisted that when the venue of the cause was changed from Cass county to Howard county, there should have been a change of the relator, and that the prosecuting attorney of the Howard Circuit Court should have been substituted. We cannot adopt this view. The action was a civil one, and a change of venue did not require a change of parties. Originating as it did in Cass county, the prosecuting attorney of that county was the proper relator, and so remained, notwithstanding the removal of the cause from that county. The statute provides that the information may be filed by the prosecuting attorney in the circuit court of the proper county, upon his own relation, whenever he shall deem it his duty to do so, or shall be directed by the court, or other competent authority. §1146 Burns 1894.

It certainly was not intended that upon every change of venue there should be a change of the relator. Counsel for appellants refer us to no authority in support of this position, and we have been able to find none. The analogy to criminal practice and pleading, suggested by counsel for

appellants, does not sustain their argument. On a change of venue in a criminal case prosecuted by information, the name of the prosecuting attorney subscribed to the pleading is never changed, nor is any other alteration of the pleading necessary. Whether the prosecuting attorney, who filed the information in the nature of a *quo warranto*, can be compelled to go out of his district to prosecute the proceeding is another question, and is not before us. *Thompson* v. *Carr,* 13 Bush (Ky.) 215, therefore, does not apply.

Upon the whole information, we think it appears that there was a wilful misuser and non-user by the Eel River Railroad Company of its franchises in regard to matters which go to the essence of the contract between the corporation and the State; that the Cass Circuit Court had jurisdiction of the subject-matter of the action and the persons of the defendants, and that there was no defect of parties. The demurrers of the appellants were properly overruled.

(4) Were the appellants entitled to judgment on the special findings of the jury? The findings of fact closely pursued, and fully sustained, the allegations of the information, and it is not necessary to set them out. Special answers separately filed by the appellants set up the defense that the cause of action did not accrue within fifteen years before the commencement of the action. The verdict finds that on the 6th day of October, 1887, the lease mentioned in the information was executed, and that thereupon the Eel River Railroad Company surrendered the absolute control and possession of its railroad, its equipments, and franchises to the Wabash Western Railway Company. Nothing is said in the special finding concerning the execution of a lease in 1879, or at any date other than October 6, 1887. But if a previous lease had been made, the execution of another instrument of like character by and between the same parties, or their successors, in 1887, may have annulled or merged the former agreement, and it undoubtedly had the effect of a new and substantive violation of the

duties and obligations of the Eel River Railroad Company. The State had the right to challenge the validity of this lease, and to demand a forfeiture of the franchises of the corporation on account of its execution and the subsequent proceedings of the two companies under it. The information was filed May 1, 1893, less than six years after the lease was executed, and, as to the Eel River Railroad Company, the action was commenced February 13, 1896. But we think the bar of the statute of limitations does not, in civil actions, apply to the State, nor, as a general rule, is its right of action lost by laches upon the part of its officers. §305 Burns 1894; *Pennsylvania Co.* v. *State,* 142 Ind. 428; *Commonwealth* v. *Erie Road,* 27 Pa. St. 339, 360; *State, ex rel.,* v. *Halter,* 149 Ind. 292; *County of Schuylkill* v. *Commonwealth,* 36 Pa. St. 524.

Besides, we think the misuser of the franchises of the Eel River Railroad Company constituted a continuing wrong. *Peck* v. *City of Michigan City,* 149 Ind. 670; *Gunder* v. *Tibbits,* 153 Ind. 591.

The special findings of fact were entirely consistent with the general verdict, and there was no error in overruling appellants' motion for judgment in their favor.

(5) Upon a careful examination of all the reasons for a new trial discussed by appellants' counsel, we are satisfied that the action of the court in overruling the motion was correct. We think the verdict and the special findings were sustained by sufficient evidence, and were in accordance with the law; that no error was committed in giving, or refusing to give, instructions; and that the court did not err in refusing to compel the jury to answer interrogatories numbered fifteen and sixteen filed by appellants.

In determining the questions arising upon the decision of the court on the motion for a new trial, we do not deem it necessary to take them up in detail, or to extend this opinion by comment upon their merits. The views we have expressed upon the controlling questions in the cause suffi-

ciently indicate our reasons for the rulings upon this branch of the case, and we regard these reasons as decisive of the several points made under this assignment of error.

(6) The statute expressly authorized the appointment of a receiver in the event that judgment was rendered against the corporation. The judgment, in case of a forfeiture, is that the franchise be seized into the hands of the State, and that the corporation be dissolved. 2 Kent's Com. 300-305; *State Bank* v. *State,* 1 Blackf. 267; *Ryan* v. *Vanlandingham,* 7 Ind. 416.

The appointment of a receiver to take possession of the property of the company was necessary and, in the exercise of its general powers, we think the court was authorized to make such appointment. It was asked for in the information, and no harm could result from the appointment as a part of the proceedings in the cause. Had it not been made until *after* judgment, the court would doubtless have had the right to make the appointment on the motion of the prosecuting attorney, and without further notice. A correct result having been reached, we do not think the action of the court should be disturbed, or that any reason exists for a modification of its judgment.

Judgment affirmed.