## QUINBY v. CONSUMERS' GAS TRUST CO. et al.

### (Circuit Court, D. Indiana.   August 17, 1905.)

### No. 10,319.

1. CORPORATIONS—CONTRACTS ULTRA VIRES—ESTOPPEL.

A public service corporation cannot be estopped from setting up the invalidity of a contract on the ground that it was without power to make it, if the subject-matter of the contract is in violation of a statute or a declared rule of public policy.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig.   Corporations, §§ 1554–1557.]

2. SAME—QUASI PUBLIC CORPORATIONS—NATURAL GAS COMPANIES.

A company organized under Burns' Rev. St. Ind. 1901, c. 38, providing for the organization of manufacturing and mining companies, for the purpose of supplying natural gas to consumers, is engaged in performing a public service, and is a quasi public corporation under the decisions of the state courts, and can exercise no powers not granted by its charter or by some other act of the Legislature.

[Ed. Note.—For cases in point, see vol. 24, Cent. Dig.   Gas, § 1.]

3. SAME—CONTRACTS ULTRA VIRES—SALE OF ENTIRE PROPERTY.

An agreement by such a company in a franchise contract with a city, giving the city an option to purchase all of its property, is beyond its powers and void, and since its performance by the company would at once incapacitate it from performing the statutory duties for which it was chartered, and, being in violation of the declared public policy of the state, it is not estopped by its acceptance and use of the franchise from asserting the invalidity of the agreement; nor is such contract, invalid when made, rendered valid and enforceable by the fact that when it is sought to be enforced natural gas has failed in the locality where the company has its wells.

4. SAME—CANCELLATION OF VOID CONTRACT—RIGHTS OF STOCKHOLDERS.

Where a quasi public corporation has the right to the cancellation of a contract giving an option for the purchase of its property, as ultra vires, to remove the cloud created thereby from its business as a going concern, its stockholders, when it is wound up, have equally the right to the removal of such cloud, that its property may be sold free therefrom and for its full value.

5. MUNICIPAL CORPORATIONS—CHARTER POWERS—PURCHASE OF NATURAL GAS WELLS.

A charter granted to an Indiana city at a time when natural gas was not known in the state, giving it the power to construct gasworks, cannot be construed to give it the power to drill or purchase gas wells at a distance, and to construct or purchase pumping stations and pipe lines to bring the natural gas within its limits for consumption and sale to its inhabitants.

In Equity.   Hearing on ancillary bill.

Henry Warrum, City Atty. (Merrill Moores, of counsel), for appellant.

Ferdinand Winter and Ayres, Jones & Hollett, for appellee Byron C. Quinby.

Lewis C. Walker, Addison C. Harris, and Daniel Wait Howe, for appellees Consumers' Gas Trust Co. and others.

BAKER, Circuit Judge.   The complainant's original bill sought to restrain the Consumers' Gas Trust Company from embarking in the

business of furnishing artificial gas on the ground that such purpose was beyond the corporate powers of the company, and to compel the winding up of the affairs of the corporation on the ground that natural gas had failed and it was no longer possible to carry on the business for which the corporation was organized. The litigation resulted in a decree in conformity to the prayer of the bill. Consumers' Gas Trust Company v. Quimby (C. C. A.) 137 Fed. 882.

The complainant has filed an ancillary bill for the purpose of removing a cloud upon the Consumers' Gas Trust Company's title, so that the property may be sold advantageously at the sale which has been advertised for September 11, 1905. The complainant's right to maintain this ancillary bill is founded upon the refusal of the directors, in whose charge the winding up of the affairs of the company was left by the original decree, to take any steps to remove the alleged cloud, which consists in the city's assertion of a right to take over the entire property of the gas company at a price to be fixed by appraisers. This alleged right of the city arises out of section 18 of the franchise contract between the city and the gas company.

Section 18 is as follows:

"The city of Indianapolis shall have the right, by giving at least six months notice, to purchase the entire plant or plants of any corporation, company, firm, or individual accepting the provision of this ordinance, at any time after the expiration of ten years from the date of its passage. The amount to be paid for such plant or plants shall be ascertained by the appointment of three disinterested persons, one to be appointed by said city and one by said corporation, company, firm or individual, and in case of disagreement, two shall select a third. The amount thus fixed shall be paid by said city within six months after the amount to be paid for such a plant or plants shall have been determined as herein provided."

The cause is now submitted upon the ancillary bill, the city's answer thereto, and a stipulation of facts. Questions arising upon the bill and the answer of the directors of the gas company thereto are reserved for future determination.

The complainant insists that the city is barred from asserting any right under section 18 by reason of its being a party to the main decree. But the original bill was only of the scope hereinabove stated, and did not challenge the right of the city to claim the option, and the decree did not undertake to determine any questions that might arise during the winding up of the affairs of the gas company. The answer of the city contained matter only responsive to the bill; the city's position being the same as that of the other defendants, namely, that the gas company's charter authorized it to convert its natural gas plant into an artificial gas plant and thereby to fulfill its charter obligations to the public and to the city. I am of the opinion that this contention of the complainant is unfounded, and this controversy must therefore be disposed of upon its merits.

The complainant asserts that the option is void by reason of the want of corporate capacity on the part of both the city and the gas company. It is obvious, however, that, if either party was wanting in capacity, the contract, which must be a valid engagement between competent persons, must be held void, unless the complainant is estopped from raising the question.

Taking up the question of the gas company's power to execute the option, it is observed that the complainant, standing in the shoes of the gas company, has instituted the present controversy. But inasmuch as the ancillary bill asserts that the city is making an unfounded claim of an interest in the property, which casts a cloud upon the title to the property, the matter stands no differently than if the city had come into court to assert its right, and the gas company were defending on the ground that it was wanting in corporate capacity to enter into the option.

This gas company was organized under the general laws of Indiana for the organization of manufacturing and mining companies. Burns' Ann. St. Ind. 1901, c. 38. Most of the companies organized under this act are purely of a private nature. But the fact that a company has been organized under this act does not decide the question whether the corporation is private or quasi public in character. That question is answered by looking to the character of the business in which the corporation purposes to engage. New Albany Waterworks v. Louisville Banking Company, 122 Fed. 776, 58 C. C. A. 576. Water companies, organized for the purpose of distributing water to cities and the inhabitants thereof, are formed under this same act. So, also, are companies for distributing artificial gas or natural gas. Companies of this character are universally recognized as being quasi public corporations. A further test, which furnishes the same answer, is this: The Legislature in 1887, authorized cities to grant natural gas companies the privilege of using the streets and alleys. The roads and streets of the state belong to the people, and no agency, neither the Legislature nor its subordinates, the municipalities, can authorize the streets to be used for private purposes. Therefore the investing of natural gas companies with the power to use streets was a declaration and establishment of the fact that natural gas companies are engaged in performing public services, and therefore belong to the class of corporations known as quasi public. It was suggested by the city that the gas company's character of a quasi public corporation did not come into being until the city granted the gas company the privilege of using the streets. But the gas company could not have accepted the use of the streets if it were a private corporation; for example, a corporation engaged in selling fruit or other merchandise from stands. State v. Berdetta, 73 Ind. 185, 38 Am. Rep. 117. The gas company in its charter from the state was endowed with the capacity to accept the privilege of using the streets, and therefore was from the time of its incorporation a quasi public company.

The charter of a corporation of this character is the measure of its powers, and the enumeration of its powers implies the exclusion of all others. Such a corporation can exercise no authority which is not granted to it by the charter under which it exists, or from some other act of the Legislature which granted that charter. Thomas v. Railroad Company, 101 U. S. 71, 25 L. Ed. 950; Oregon Ry. Co. v. Oregonian Ry. Co., 130 U. S. 1, 9 Sup. Ct. 409, 32 L. Ed. 837; Board of Commissioners v. L. M. & B. R. Co., 50 Ind. 85; Eel River R. Co. v. State, 155 Ind. 433, 57 N. E. 388.

A quasi public corporation is bound by definite obligations to the state. The granting of a charter by the state to such a corporation is not simply a license to the corporation to engage merely as long as it

chooses in serving the public; but the company's acceptance of the charter (whether granted by a special or a general act) is a promise and undertaking on its part that it will do nothing and suffer nothing to be done that will disable it from performing its duties during the term of its charter. Central Transportation Co. v. Pullman's Palace Car Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55; New Albany Waterworks v. Louisville Banking Co., 122 Fed. 776, 58 C. C. A. 576.

There is no pretense that the gas company was authorized by its charter to enter into an option to sell all of its property in gross. The policy of the state, according to the decisions of the state Supreme Court, is to hold such a corporation to its obligations to the state embodied in the charter. An engagement of such a corporation to strip itself of all its facilities for serving the public is as much against positive law as if that act were expressly prohibited by statute, for the declared rules of public policy are as much a part of the body of the law as any statutory enactment.

Manifestly the gas company, as grantor, could not do anything to enlarge its own capacity to sell out. Its consent could not abrogate its contract with the state, without the state's consent. Neither could the city abrogate or in any way diminish the gas company's contract with the state. The state alone could change the gas company's capacity as grantor. That change must be found in some legislative enactment. The Indiana Legislature has never passed an enabling act to enlarge the corporate powers of the gas company or to relieve it of its obligations to the state. But such an enlargement might be found in an act on some other subject, and, if clearly expressed, should be given effect, unless that were impossible by reason of the provision of the Indiana Constitution respecting titles of acts. Yet it should be clearly expressed, for a change in the state's policy, a repeal of the restrictions in the charter legislation, should not be inferred by any implications short of those that are exclusive of any other intent.

The act of 1887 authorized cities to regulate and control natural gas companies in certain respects. That meant that the city should do what was done in the first 17 sections of the ordinance in question. It meant that the city should regulate and control the manner in which the gas company should perform its service, not that the city should incapacitate the gas company to perform its service, nor that the city should alter or abridge the gas company's contract with the state. The act of 1887, every word and syllable of it, could be carried into effect without going natural gas companies having to have the power as grantors to strip themselves of all their facilities for serving the public. Therefore it is not the inevitable or necessary implication that the Legislature intended to repeal the charter restrictions, and to reverse a public policy as old as the state.

When the ordinance in question was adopted, the city's charter gave it the power to construct and operate gasworks. When the Legislature granted the charter, natural gas was unknown in Indiana. No doubt the word "construct" should be given the most liberal interpretation possible. The city should not be limited to constructing gasworks by itself as builder. If some one built gasworks, the city should be

permitted to buy. If a gas company's charter obligation to the state had terminated, it is not perceived why the city should not buy rather than build. Granting, for the moment, that the right to buy gasworks included the right to buy natural gas wells miles away, pumping stations, pipe lines, etc., that provision of the city charter, every word and syllable of it, could be carried into effect without going natural gas companies having to have the power as grantors to strip themselves of all their facilities for serving the public; that is, the city, as easily as an individual or another corporation, could construct (buy) gas wells, pipe lines, etc., without taking over the properties of going concerns. Therefore it is not the inevitable or necessary implication that the Legislature intended to repeal the charter restrictions, for such a repeal was no more necessary to the city's exercise of its granted rights than to an individual's exercise of his natural rights.

There is neither legislation respecting natural gas companies by which the state absolved them from their obligation to the state, nor legislation on other subjects which either directly or by necessary implication repealed the charter restrictions upon such companies. The question now is whether the complainant, standing in the place of the gas company, can be heard to assert that the giving of the option was void, because beyond the corporate powers of the gas company. There is a difference in the rights of corporations to take advantage of a defect or deficiency in corporate powers, depending upon the nature of the act in question. If a corporation is engaged in a purely private business, the circumstance that it has received and retained benefits under a contract which was beyond its corporate powers may frequently preclude it from denying the legality of the contract. If a corporation, organized by private persons for gain, is engaged in performing some service for the public, and makes a contract beyond its charter powers, it may be estopped from asserting the invalidity of the contract if the performance thereof does not affect its discharge of its duties to the public. Such was the nature of the case of State Board of Agriculture v. Citizens' Street Ry. Co., 47 Ind. 407, 17 Am. Rep. 702, and of the other estoppel cases cited. But such a corporation cannot be estopped, if the performance of the contract involves the violation of a statute or a declared rule of public policy. The difference is well illustrated incidentally in the recent case of Gray v. Milwaukee, etc., Ry. Co. (C. C. A.) 140 Fed. 337. Public policy is concerned that the railroad be not disrupted by forfeiture of a part of its right of way to a private person; but public policy is not concerned in protecting the railroad company from being compelled to pay the value of the land or the value of the individual's right of forfeiture. The principle extends as well to individuals. If one obtains money, which he otherwise would not have obtained, by contracting to pay usurious interest, or if he secures employment, which he otherwise would not have secured, by contracting to exempt his employer from damages for injuries resulting from the employer's omission of statutory safeguards, he is not estopped from asserting the illegality of the contract, though he has received and retained all the benefits of the contract. Davis Coal Co. v. Polland, 158 Ind. 607, 615–617, 62 N. E. 492, 92 Am. St. Rep. 319. If this were not so, the result would

be that parties could by their conduct or their contracts reciprocally give each other the right to violate the law or make the law for themselves. The law can only be upheld (and that is the highest good of the whole body of citizens) by declaring all such contracts unenforceable, irrespective of the equities between the parties. The lender should be repaid. He may recover for money had and received, but not on his contract as made. The gas company obtained the use of the streets wholly, it may be presumed, by virtue of its promise to turn over its business to the city at the end of 10 years or so soon thereafter as the city should be ready to take it. But there is no issue, either by cross-bill or otherwise, respecting the city's right to compensation. The city stands squarely on the proposition that either the contract was within the corporate powers of the parties or the complainant is estopped.

The contract in question belongs to the class in which estoppel cannot be used to smother the fact that the contract is void. If the gas company were required, at the end of 10 years, or at any time while it was engaged in serving the public, to surrender its property as an entirety to the city, the company would not be in a position to continue the service it had been rendering and for which it had been granted its charter by the state. The sale of its plant as a going concern would necessarily include the good will of the business. And although the city would not be required, in order to operate the plant, to take an assignment of the city franchise of the gas company, yet in paying for the good will of the business the city would be paying for the extinguishment of the franchise. And at all events the city would be authorized to cancel the privilege which had been given the company, instantly upon the company's incapacitating itself to discharge its obligations to the public. The legal effect of such an undertaking, under the law of Indiana, is succinctly stated in Muncie Natural Gas Co. v. City of Muncie, 160 Ind. 97, 104, 66 N. E. 436, 60 L. R. A. 822: .

"Without attempting to cover the whole ground, it may be said that, if a contract is of such nature that, had the corporation at once proceeded to execute it, its act would have been contrary to public policy, or, expressly or impliedly prohibited by statute, or would in any degree disable the corporation from the performance of its statutory duties, the undertaking cannot be enforced by either party."

The fact that natural gas has failed in the locality where the gas company had its wells is merely an accident, not an essential, in the case. The contract can only be read as made, in view of the subject-matter about which the parties were bargaining. What the parties meant, and all that they meant, was that the gas company should have the absolute right to conduct the business for 10 years and that thereupon the city should have the right to take over the business whenever it was ready. If, while the company was furnishing natural gas, the right existed to remove the cloud, so that the company might have an unquestionable title to its business as a going concern, so now the stockholders would have equally the right to a free sale of the property.

It being found that the gas company was wanting in corporate power to enter into the contract, the fact that the city was a party thereto cannot alter the situation or result. New Albany Waterworks v. Louisville Banking Co., 122 Fed. 776, 58 C. C. A. 576.

In examining the Indiana legislation with a view to determining the power or want of power of the gas company as grantor, at one place it was conceded, arguendo, that the city's charter right to construct gasworks would cover the purchase of gas wells, pumping stations, pipe lines, etc. But I think the concession was entirely unwarranted. When the charter was granted, the only gasworks known were such as could be built and operated within territory over which the city had been given jurisdiction. The court takes judicial notice of the fact, as a part of the history and topography of the state, that Indianapolis and the vast majority of the cities of the state with the same charter provision are not in the natural gas belt. The sinking of wells is expensive and very frequently unsuccessful. The business is speculative, involving the possibilities of large gains or large losses, and is promoted as such. Did the Legislature, by authorizing cities to construct gasworks, at a time when it was not known that natural gas was to be found in the state, intend that, if natural gas were discovered, the common councils of the cities should involve the taxpayers in the hazardous enterprise of going to remote counties to prospect for wells, build pumping stations, and lay miles and miles of pipe lines? It seems to me incredible. To what extent municipal ownership shall be carried is a political question, to be answered by the political department of the state. Municipalities have only such powers as the state confers upon them. Their charters are given and are taken away by the Legislature. If cities have not the powers they desire in the line of the ownership of public utilities, they cannot create them by ordinance or contract. They must go to the Legislature.

In view of the conclusions already reached, it is unnecessary to consider the many other interesting questions which were ably presented at the bar by the learned counsel of the respective parties.

A decree will be entered against the city in conformity to the prayer of the ancillary bill.