Davidson, &c., v. Morrison, &c.

---

CASE 56—PETITION EQUITY—DECEMBER 6.

# Davidson, &c., v. Morrison, &c.

APPEAL FROM LIVINGSTON CIRCUIT COURT.

1. ANCIENT DEEDS CAN NOT BE READ AS EVIDENCE against an adverse claimant in possession, with his title of record, to establish, on the part of the plaintiff, a right of entry, where no possession prior to the execution of the deed, under the same chain of title, or since its execution, has been shown.

2. PARTIES TO ACTIONS—EQUITABLE EJECTMENT.—This action by the beneficial owner to have land sold and the proceeds divided as directed by the will under which the plaintiff claims, is, in fact, an action for the recovery of the land, as the relief sought can not be had until the defendants are ousted; and as the defendants failed to demur because the holders of the legal title were not before the court, but accepted the issue tendered, it is now too late to object for the first time that the plaintiff can not maintain the action upon an equitable title.

3. CHANCELLOR'S FINDING AS TO HEIRSHIP UPHELD.—The plaintiff and the defendant claim the land through different persons, each alleging that the persons through whom he claims are the heirs of the original patentee. The defendant and those through whom he claims have been in possession for many years, while neither the plaintiff nor those through whom he claims have ever had the possession. *Held*—

Davidson, &c., .v. Morrison, &c.

That even if the evidence as to heirship preponderates in favor of the plaintiff, the finding of the chancellor for the defendants will not, under the circumstances, be disturbed.

J. W. BUSH, J. K. HENDRICK AND W. R. BUSH FOR APPELLANT.

1. A person will be presumed to be dead after seven years from the time he was last shown to have been alive, and after a long lapse of time without proof of heirs he will be presumed to have left none. (4 Bush, 31; Greenleaf on Ev., vol. 2, sec. 355.)

2. A deed over thirty years old and in possession of party claiming under it is evidence of its own execution, and evidence of title though no· possession held under it. (Greenleaf on Ev., vol. 1, sec. 21; Harland v. Howard, 2 Ky. Law Reg., 368.)

3. Recitals in a deed cannot be contradicted by one claiming under it. (10 B. M., 205; 9 B. M., 561; 1 J. J. M., 450.)

4. What constitutes a vested interest: 10 B. M., 472; 3 Met., 463; 2 Bush, 158; 11 Bush, 656.

W. D. GREER, WM. LINDSAY, JOHN T. SHELBY AND GEO. B. KINKEAD FOR APPELLEES.

An ancient deed without possession under it cannot be used as evidence. (Cook v. Totten, 6 Dana, 110; Johnson v. Matchen, 9 Dana, 233; Winston v. Gwathney, 8 B. M., 20; Bergess v. Chenault, 9 B. M., 286.)

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

This is an action in the nature of an equitable eject-ment instituted by E. C. Davidson, in the Livingston Circuit Court, against the appellees, E. E. Morrison, M. J. Anderson, C. M. Powell and William Talbott, to recover several tracts or parcels of land held and owned in severalty by the above-named defendants. The land in controversy is claimed by the plaintiff through the patentee, Christopher Roan, who, it is alleged, held two patents—one for one thousand acres, dated October the 18th, 1787, and the other for four hundred acres, dated May 3d, 1775.

The patentee, it is claimed, left at his death two children who were his heirs-at-law, named James Roan and William Roan, and by an amendment it

is alleged that this was a mistake; that Christopher Roan, the patentee, died without children, and James and William Roan were his brothers, and inherited the estate. That James and William, being thus invested with title, sold and conveyed by deed their land in August, 1797, to one Robert Moore. That Robert Moore devised the land to his son, Archibald Moore, and that Archibald Moore devised it to his wife, Maria M. Moore, during her life, with the power to sell to pay certain legacies if necessary, and at her death directed that the same might be sold, and the proceeds distributed among such of the children of William Davidson, then in the city of London, as might be living at the period of her death.

The widow (Maria) afterward married one Robertson, and died in November, 1873. She had no children by her first husband, so the children of William Davidson, who were alive at the death of Maria, took under the will of Archibald Moore. Their names were E. C. Davidson, Agnes Sibley and Mary Jane Kyle. E. C. Davidson purchased the interests of Mrs. Sibley and Mrs. Kyle, and thereby became the absolute owner of the property devised to the children of William Davidson by the will of Archibald Moore. In this manner he derives title, and, as sole plaintiff, institutes the present action.

The defendants deny the title of the plaintiff, and place him by the issue made upon his right to recover; plead title in themselves, and also an adverse holding for more than thirty, or at least fifteen years. All the defendants but Talbott say that the one thousand acres of land was patented to Christopher Roan; that he

died leaving two children, John and Elizabeth; that
John died without children, leaving a will by which he
devised his interest in the land to his sister, Mrs. Law-
rence (Elizabeth having married Lawrence), for life,
remainder to her son Samuel. That Mrs. Lawrence
died, leaving as her children Samuel, Louisa Sledge,
and Mrs. Killough. That Samuel died after his mother
childless, and his interest passed to his two sisters.
That Mrs. Sledge and her husband conveyed her inter-
est to her sister, Mrs. Killough, by deed of record in
the Livingston county clerk's office, and that Mrs.
Killough and her husband, on the fifteenth of March,
1847, conveyed the one thousand acres of land to Har-
vey Lewis, by a recorded deed in same office. In
August, 1850, Lewis sold and conveyed this land to L.
M. Flournoy. On the thirtieth of August, 1860, Flour-
noy conveyed the land, in conjunction with Trabue,
Cade and others, to Jennings, and that Jennings then
sold a part of this one thousand acre tract to the de-
fendant Anderson—three hundred acres—and made him
a deed; and five hundred and fifty-three acres to M. E.
Morrison, etc. All of these deeds under which the
defendants claim were of record in the Livingston
county clerk's office, beginning in the year 1847, and
the title passing to the successive vendees from that
date until this action was brought against the present
defendants, who, with this title and their respective
deeds, were in the actual possession.

Talbott, one of the defendants, claims, as the others
do, under Flournoy, and he from Harvey Lewis; Lewis
having purchased both the one thousand and the four
hundred acre tract of Mrs. Killough, who claimed to

be the sole owner by descent, and purchased from those .claiming under Christopher Roan, the original patentee. The court below on the hearing dismissed the petition of the appellant, and he now appeals.

The facts of this record show that neither the original patentee or his descendants, who are claimed to be such by the appellant, nor any of the purchasers from them, ever entered upon any part of this land at any period of time from the date of the patents (more than a century ago) up to the institution of the action.

It is claimed by the appellant, who is the plaintiff below, that James and William Roan, through whom he derives title, were the children of Christopher Roan, the patentee, and that fact he himself proves from family tradition—that of his own family, and not those related to or descended from Christopher Roan. Those who are claimed to be related to the patentee give but little information as to his family history. One witness states: "Upon the hypothesis that he was his grandfather's brother, he must have been *my* great uncle." He had heard nothing specially from the older members of the family in regard to the matter, but is of the opinion that Christopher Roan died childless. Others say, from family tradition, they are of the opinion that James and William Roan were the brothers of Christopher Roan, but fail to give any thing like a history of the family, or to give even the names of any person or persons of their own family with whom they conversed on the subject.

The weight of the testimony on the subject of heirship might preponderate for the appellant, if aided in any manner by a claim of ownership before this action

was instituted. Here was a valuable tract of land, located on or near the Ohio river, that was being sold to innocent parties for value, and the most of it at its full value; deeds recorded, and farms opened on the land upon which the children and grandchildren of the present occupants, or some of them, have been raised, and no claim of title set up by either Mrs. Moore, the life tenant, or her co-executor, during the half century transpiring between the death of her husband in 1822 and her death in 1878. Those in remainder must have been aware of their interests, if they had any, and in coming to assert title under one who was of revolutionary fame, we find that family tradition has not only been lost sight of, in the attempt to make out the chain of title, but the conveyances from those who are alleged to have been the brothers of the patentee have never yet been recorded, but kept in the family of the present plaintiff and the life tenant, and exhibited for the first time in the trial of the present action as ancient and unrecorded deeds evidencing title in the plaintiff, who was never in possession, or those under whom he claims, against those who were and had been in the actual possession of the land under a hostile claim for more than thirty years with deeds of record.

The conveyance from William Roan, executed in 1797, was never recorded, and that of James Roan, executed in 1798, was recorded in the clerk's office of the Court of Appeals, but not properly authenticated—so both deeds, alleged to have been from the two brothers of the patentee, have no virtue except as ancient writings, and we find no authority holding in a case like this that they may be read as evidence of title by those

who were never in possession against those holding
under an adverse title with a possession long enough
to ripen into a title.   Mr. Greenleaf, in his work on
Evidence, volume 1, says :  "Whether if the deed be
a conveyance of real estate, the party is bound first to
show some acts of possession under it, is a point not
perfectly clear upon the authorities ; but the weight of
opinion seems to be in the negative, as will hereafter
be more fully explained."   In explanation of this doc-
trine, he says :  "But where unexceptionable evidence
of enjoyment referable to the document may reasonably
be expected to be found, it must be produced."   (Sec-
tions 22 and 147, pages 31 and 191, volume 1.)   In a
note to the sections referred to, Blackburn, Justice, says:
"Inasmuch as, after a long time, all the witnesses who
could prove such possession are dead, the law permits
ancient documents to be given as evidence from which
the jury may properly draw an inference that there was
such possession."   And further says Mr. Greenleaf :
"If such evidence referable to the document is not to
be expected, still it is requisite to prove some acts of
modern enjoyment with reference to similar documents,
or that modern possession or user should be shown
corroborative of the ancient documents."   Mr. Whar-
ton, in his work on Evidence, says :  "It has been
frequently held that there must be accompanying pos-
session to enable a deed over thirty years old to be
read in evidence without proof of its execution ; but
this doctrine can not be sustained on principle.   Proof
of contemporaneous possession is unnecessary, though
without such proof the deeds may be entitled to little
or no weight."

We find no reported case in this court holding that such deeds may be read as evidence against an adverse claimant in possession with his title of record, to establish on the part of the plaintiff a right of entry where no possession prior to the execution of the deed under the same chain of title, or since its execution, has been shown. Under our system of registration, the title to realty may be easily traced, and one's entry on land, a title to which is in another, affords him no protection unless he has the prior right. He may even enter under the same title as junior purchaser without notice of his adversary's claim, actual or constructive, and having thus acquired the legal title, hold the land as his own. So the danger of permitting ancient deeds to prove themselves in order to establish title, or to evidence the right of entry, or that the parties at one time held possession under them, may be readily seen, and particularly against those with a title of record. The cases of Cook v. Totton, 6 Dana, 108; Thruston v. Masterson, 9 Dana, 228; Winston v. Gwathmey, 8 B. M., 19; Burgin v. Chenault, 9 B. M., 285, and Taylor v. Cox, 2 B. M., 429, all sustain the right of the plaintiff to rely on such ancient writings to sustain the possession.

They may be competent to show the extent of possession, or to evidence in some cases the facts recited in them, or even to show the right of entry against one without title; but in the absence of a possession under them, the offer to make the chain of title perfect by this character of evidence, to defeat a title of record and a possession under it for more than thirty years, will not be listened to by either the common law judge or the

chancellor. These deeds were read after the lapse of eighty years to show a right of entry only, with the life tenant and the remainderman in the possession of them during the greater part of that period, and no claim of title at any time asserted until this action was instituted.

If entitled to any weight as evidence of title or a former posession, it is so slight as to have authorized the chancellor to disregard them.

The defense claimed to hold, and did hold, under title deeds from John and Elizabeth Roan, or through them by successive deeds dated and recorded as far back as 1847, connected with a continued possession since that time.

The fact that John and Elizabeth Roan were the children of the patentee is not shown except by the recitals in the deeds of the defendants and the proof by the plaintiff himself that the patentee left two children.

This long-continued possession by the defendants has been under the title of the descendants of John and Elizabeth Roan, who, as is alleged, were the two children of the patentee. One set of claimants have been in the continued possession, and the other, the plaintiff and those claiming under the two brothers of the patentee, never had the possession.

The proof of heirship is, therefore, as persuasive on the one side as the other, and if conceded that the testimony preponderates for the plaintiff on this branch of the case, ought this court to disturb the finding below, whether this action be regarded as at law or in equity? It is at last an action for the recovery of

the land, as the relief sought is to have the land sold
and the proceeds divided as directed by the will of
Archibald Moore. This cannot be done until those in
possession are ousted by a *habere facias* or the judg-
ment of the chancellor. The beneficiaries are in court
asking the relief, and whether entitled to the proceeds
or the land itself, the issue as to the title was made,
and had to be determined before the land could be sold.
The appellees failed to demur either for the want of
proper parties, or because the holders of the legal
title were not before the court, but accepted the issue
tendered, and it is now too late, for the first time, to
raise the question that these parties with the beneficial
interest could not maintain the ejectment upon an
equitable title. It must be regarded by this court as
an action in equity by the beneficial owner against the
claimants in possession for the recovery of the land.

The case was in this manner prepared and decided,
and will be so considered in this court. If this is not
in the nature of an ejectment by the parties entitled
to the proceeds of the land, to recover it from the
defendants, then the appellant has no cause of action
against these tenants in possession. If he seeks to
recover the proceeds of the land alone, then the sur-
viving executor of Archibald Moore, or a trustee ap-
pointed by the chancellor (if the executor is dead),
should have instituted this action ; and such would
have been the character of the proceeding required
below, but for the failure of the defense to raise the
question as to the right of the beneficial owner to
maintain the action, at least without making the
holder of the legal title a party to the proceeding.

While the objection could have been listened to below, the question cannot now be raised in this court for the first time. The finding of the chancellor below ought not, therefore, to be disturbed, even if there was a preponderance of testimony for the plaintiff as to who were the heirs at law of the original patentee, and for the more formidable objection whether, at law or in equity, the plaintiff has failed to connect his title with the patent under wnich he claims. But viewing this case in either aspect with the ancient deeds admitted, it is manifest the plaintiff is not entitled to recover. The question raised as to the purchase by Flournoy, of whom the tenants in possession purchased, from the widow of Archibald Moore, of her interest in the land as affecting the present owners, has also been considered. It appears that Flournoy had, prior to his purchase of the interest of the widow of Archibald Moore, bought the land from Harvey Lewis, who had purchased from Mrs. Killough, the descendant of, or who claimed to be the descendant of, the patentee on the defendants' side of this controversy. Flournoy obtained title in various ways to this land. He was evidently, after his purchase from Lewis, trying to buy his peace. He purchased from McCauley's heirs, who had entered a part of this land; also of Enders, and laid a warrant himself on part of it. He swears that he did not know what title Mrs. Robertson had, and in fact don't recollect of ever having purchased it. The fact is that Calvin Piles, as the attorney in fact of Mrs. Killough, took possession of this land in 1842, and those holding under her have never been out of possession. The title of the defendants must now be

regarded as complete, not by the lapse of time, but because the record title, with the long-continued possession, must defeat a recovery based solely upon the traditional testimony of ownership attempted to be shown by the plaintiff.

The judgment of the chancellor is therefore affirmed.

Judge BENNETT not sitting.