CENTRAL TRUST CO. OF NEW YORK v. INDIANA & L. M. R. CO. et al.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1900.)

No. 541.

1. APPEAL—MATTERS REVIEWABLE.

Where a trustee in a railroad mortgage brought suit to foreclose such mortgage, and also prayed judgment for deficiency against the mortgagor and a guarantor of the bonds thereby secured, and has appealed from a decree denying it relief against the guarantor, an individual bondholder cannot be heard in the appellate court, for the first time, to question the authority of the trustee to maintain the action against the guarantor, in the absence of any pretense of bad faith on the part of the trustee; such objection being one which could not be urged by the appellant.

2. RAILROADS—GUARANTY OF BONDS—ESTOPPEL TO CONTEST LIABILITY.

A railroad company, empowered by statute to execute a guaranty of the bonds of another company under certain conditions, and having executed such guaranty, cannot urge its noncompliance with the conditions to defeat its liability thereon, as against bona fide purchasers of the bonds.

3. SAME—POWER TO MAKE GUARANTY—INDIANA STATUTE.

It having been settled by repeated decisions of the state courts and the supreme court of the United States that a railroad company has no power under the statutes of Indiana to lease a line of road of another company, a company is not brought within the terms of 2 Burns' Rev. St. Ind. 1894, § 5216, authorizing a company "whose line of railway extends across the state in either direction" to become a guarantor of the bonds of a railroad of an adjoining state under certain conditions, by the fact that it is operating a leased line across the state, and its guaranty of bonds of a company of another state building a connecting line is ultra vires and cannot be enforced; all purchasers of the bonds being chargeable with notice of the company's want of power.

Appeal from the Circuit Court of the United States for the District of Indiana.

The appellee the Terre Haute & Indianapolis Railroad Company (herein for brevity, called the "Indianapolis Company") was incorporated in the year

1817 by a special act of the legislature of the state of Indiana, and constructed and operated a railway extending from the city of Indianapolis, in that state, to a point on the western line of the state near the city of Terre Haute,—a distance of about 70 miles. The act of incorporation authorized the construction of the railway from the westerly line of the state, through Terre Haute and Indianapolis, to Richmond, in the county of Wayne, near the eastern boundary of the state. By a subsequent act of the legislature, passed in 1851, and presumably at its request, the Indianapolis Company was released from its obligation to construct a line eastwardly of Indianapolis. In the year 1873, pursuant to law, the company surrendered its rights under its special charter, and accepted the provisions of the general railroad law of the state, approved May 11, 1852. On February 10, 1868, the company leased for a period of 999 years a line of railway extending from East St. Louis to Terre Haute, and connecting with its line of railway at the westerly line of the state. In the year 1879 the Indianapolis Company leased of the Terre Haute & Logansport Railroad Company for a period of 99 years its line of railway extending northeasterly from the city of Terre Haute to the city of South Bend, in the state of Indiana, which latter city is located a few miles south of the northern boundary of the state, and about midway between the easterly and westerly boundaries of the state. In the year 1889 the Indianapolis Company was in possession of and operating these lines of railway, forming a continuous line from East St. Louis, in the state of Illinois, opposite the city of St. Louis, Missouri, extending northeasterly to the city of South Bend, in the state of Indiana, connecting at or near Terre Haute with its own line of railway. The Indiana & Lake Michigan Railway Company (herein called the "Michigan Company") is a corporation created by consolidation of an Indiana with a Michigan corporation, owning a line of railway extending from South Bend, Ind., to St. Joseph, Mich. By agreement between the two companies dated June 4, 1889, the Michigan Company agreed to construct its line of railway from an intersection with the line in possession of the Indianapolis Company at South Bend, Ind., to a connection with the Chicago & West Michigan Railway at the city of St. Joseph, in the state of Michigan, and to lease its line to the Indianapolis Company for a period of 99 years, under an agreed division of earnings, namely, the Indianapolis Company to retain for expense of operation 75 per cent. of the gross earnings, the balance to be applied to the payment of taxes; to the payment of interest accruing upon the bonds of the Michigan Company to an amount not exceeding $480,000; the surplus, if any, to be paid to the Michigan Company. The Indianapolis Company, on its part, agreed to guaranty the payment of the principal and interest of the bonds to the amount stated, to be issued by the Michigan Company. This agreement was carried into effect. The line was constructed, the lease executed, and the Indianapolis Company went into possession and operation of the railway. The Michigan Company issued its negotiable bonds to the amount of $480,000, payable to bearer, secured by a trust deed dated September 2, 1889, of which the Central Trust Company, appellant, is the sole surviving trustee. This trust deed is in the ordinary form of such instruments, and authorizes the trustee upon default to take possession, or to foreclose, but contains no covenant or provision prohibiting suit at law by holders of the bonds, or authorizing such action by the trustee, or investing it with any authority to sue at law upon the bonds for the benefit of the bondholders. The Indianapolis Company, simultaneously with the execution of such trust deed, duly executed a written guaranty, indorsed upon each bond, as follows: "The Terre Haute and Indianapolis Railroad Company, a corporation created under the laws of the state of Indiana, in consideration of the ninety-nine years lease of the railroad mentioned in the within bond, does hereby guaranty the payments of the principal and interest of said bond according to the terms and conditions thereof." And the bonds, with such guaranty upon them, went upon the market, and into the hands of bona fide purchasers for value. Subsequently, upon default in the payment of interest of such bonds, a committee was appointed at a meeting of the holders of many of them, to represent their interests; and it is stated in evidence by one of the committee that all the holders of the bonds, then or subsequently, came in under the arrangement. The written agreement executed by the bondholders recited the fact of the

guaranty of these bonds by the Indianapolis Company, and created a committee which was authorized to take such measures as it might deem proper against the Michigan or Indianapolis Company, or both, to enforce the payment of the bonds. The agreement further provided that bondholders coming in under the arrangement should deposit their bonds with the Central Trust Company, receiving its certificates therefor, and that the Trust Company should hold them subject to the order of the committee. Thereafter the trust company, at the request of the committee, filed in the court below its bill of foreclosure against the Michigan and Indianapolis Companies, and therein, among other things, prayed that for any other deficiency arising from the sale of the mortgaged premises, the trust company, complainant, might have judgment against the Michigan Company as the obligor in the bonds, and against the Indianapolis Company as guarantor thereof, which guaranty was aptly charged in the bill of complaint. The Indianapolis Company pleaded that the guaranty was ultra vires the corporation. Thereafter, on June 16, 1898, the court decreed foreclosure and sale of the mortgaged premises, but denied the application of the trust company, complainant, for a decree for deficiency as against the Indianapolis Company, holding the guaranty invalid. The Central Trust Company appeals to this court from so much and such part of the decree that holds the guaranty invalid, and refuses judgment thereon for the deficiency.

A. L. Mason, for appellant.
Lawrence Maxwell, Jr., for appellees.

Before JENKINS and GROSSCUP, Circuit Judges, and SEAMAN, District Judge.

JENKINS, Circuit Judge, after the foregoing statement of the case, delivered the opinion of the court.

Since the hearing in this court, the counsel for certain unnamed bondholders petitioned for leave to submit an argument upon the question of the right of the Central Trust Company, trustee, to recover upon the guaranty in question; insisting that the appellant was trustee of the bondholders in respect of the mortgaged premises; that upon foreclosure of the mortgage, and distribution of the proceeds of sale, the functions of the trustee ceased, and it had no authority under the law or under the trust deed to maintain a suit at law or in equity to recover a personal judgment or decree against the guarantor of the bonds. Upon consent of the appellant, the court permitted a brief to be filed urging that contention, and we have duly considered the argument presented. It may well be that, in the absence of apt stipulations in the trust deed, a trustee is without authority to enforce the collection of the bonds to any further extent than to subject the mortgaged property to sale, and to distribute the proceeds among the holders of the bonds, and that thereupon the functions of the trustee cease. This question was not suggested in the court below, and cannot rightly be presented for the first time in an appellate court. Railway Co. v. Henson, 19 U. S. App. 169, 7 C. C. A. 349, 58 Fed. 531; Bowser v. Mattler, 137 Ind. 649, 654, 35 N. E. 701, and 36 N. E. 714; Giraldin v. Howard, 103 Mo. 40, 15 S. W. 383; Davidson v. Morrison, 86 Ky. 397, 5 S. W. 871; Bank v. Gilpin, 105 Mo. 17, 16 S. W. 524; People v. Smith, 42 Mich. 138, 3 N. W. 302. A decree was sought in favor of the trustee for the deficiency and upon the guaranty. The appellant surely cannot complain, except of the refusal of the court below to

grant its prayer. It cannot here be heard to say that its application was rightly denied, but on other ground than that held by the court below. If the trustee acted without authority of the bond-holders in seeking a decree for the deficiency, the latter may not be estopped by the decree, or by the adjudication below that the guaranty was invalid. As respects the trustee, it exhibited to the court proof that the reorganizing committee was authorized to take all necessary measures for the collection of these bonds; that all the bonds were deposited with the owners under the arrangement with the trust company, to be dealt with by it under the direction of the reorganizing committee. There is sufficient to show that that committee directed the filing of the bill, praying inter alia a personal judgment against the guarantor upon its guaranty, and actively participated in the prosecution of the suit. Being thus the holder of the bonds upon an express trust, the appellant could doubtless maintain a suit at law upon them. Against its own application for judgment upon them, it cannot be heard to object that a court of equity ought not to entertain, in connection with the foreclosure proceedings, the question of the liability of the guarantor. O'Brien v. Smith, 1 Black, 99; Law v. Parnell, 7 C. B. (N. S.) 282. It is only just to say that the trust company has raised none of these questions. A bondholder, not a party to the suit, if he be not estopped, in the absence of any pretense of bad faith on the part of the trustee, should not be heard in opposition to the action of the trustee. If he be estopped by the deposit of his bonds under the agreement for reorganization, he is bound by the action of the trustee.

This brings us to the consideration of the main question upon its merits. It is the settled doctrine of the supreme court of the United States that:

"A railroad corporation, unless authorized by its act of incorporation or by other statutes to do so, has no power to guaranty the bonds of another corporation: and such a guaranty, or any contract to give one, if not authorized by statute, is beyond the scope of the powers of the corporation, and strictly ultra vires, unlawful, and void, and incapable of being made good by ratification or estoppel." Louisville, N. A. & C. R. Co. v. Louisville Trust Co., 174 U. S. 552, 567, 19 Sup. Ct. 817, 43 L. Ed. 1081, and authorities cited.

We must therefore look to the statutes of the state of Indiana to ascertain if power was conferred upon the Indianapolis Company to make the guaranty in question. By an act of the legislature of that state in force March 8, 1883, entitled "An act to authorize railroad corporations organized under the laws of the state of Indiana to indorse and guarantee the bonds of any railroad company organized under the laws of any adjoining state" (Acts Ind. 1883, p. 182; 2 Burns' Rev. St. Ind. 1894, §§ 5216–5218), it is provided that:

"Sec 5216. (E. S. 1049.) Guaranty of Bonds of Another Company.—1. That the board of directors of any railway company organized under and pursuant to the laws of the state of Indiana, whose line of railway extends across the state in either direction, may, upon the petition of the holders of a majority of the stock of such railway company, direct the execution by such railway company of an indorsement guaranteeing the payment of the principal and interest of the bonds of any railway company organized under or pursuant to the laws of any adjoining state, the construction of whose line or lines of

railway would be beneficial to the business or traffic of the railway so indorsing or guaranteeing such bonds.

"Sec. 5217. (E. S. 1050.) Petition of Stockholders.—2. The petition of the stockholders specified in the preceding section of this act shall state the facts relied on to show the benefits accruing to the company indorsing or guaranteeing the bonds above mentioned.

"Sec. 5218. (E. S. 1051.) Limitation.—3. No railway company shall, under the provisions of this act, indorse or guarantee the bonds of any such railway company or companies as is above mentioned to an amount exceeding one-half of the par value of the stock of the railway company so indorsing or guaranteeing as authorized under this act."

We dismiss without consideration the provisions of the latter two sections, because, if those provisions were not complied with by the Indianapolis Company, it cannot urge its noncompliance to defeat the guaranty upon the bonds, as against bona fide holders of them without notice. Louisville, N. A. & C. R. Co. v. Louisville Trust Co., supra. The record here presents no evidence of such notice, and does exhibit long acquiescence on the part of the stockholders of the Indianapolis Company, with actual knowledge of the lease and guaranty. The question thus presented is whether the Indianapolis Company is within the class of railroad companies to which the statute is applicable. The power is conferred only upon a railroad company "whose line of railway extends across the state in either direction." If the line of railway extending from the westerly line of the state near Terre Haute to Indianapolis is, within the true intent and meaning of the statute, to be deemed "the line of railway" of the Indianapolis Company, it manifestly cannot be said to have a line extending across the state in any direction; for that terminates at Indianapolis, at about the center between the easterly and westerly boundaries of the state. The purpose of the act clearly was to enable those railroad companies whose lines extended from one boundary of the state to another to form trunk lines, or to procure an outlet into an adjoining state by running arrangements over lines directly or indirectly connecting with their own lines of railway, and to enable them, when necessary for that purpose, to guaranty the bonds of the company of such adjoining state. It is clear that the Indianapolis Company does not come within the contemplation of the law, if the statute includes only a company which owns absolutely a line of railway extending across the state. It is, however, urged that the Indianapolis Company is brought within the purview of the statute because of the connecting lines leased by it. The difficulty with this contention is that it appears to be settled by repeated decisions that there is in Indiana no law authorizing a railroad company of that state to lease the line of another railroad company either within or without the state. Board of Com'rs of Tippecanoe Co. v. Lafayette, M. & B. R. Co., 50 Ind. 85; Pennsylvania R. Co. v. St. Louis, A. & T. H. R. Co., 118 U. S. 290, 6 Sup. Ct. 1094, 30 L. Ed. 83, on rehearing, 118 U. S. 630, 7 Sup. Ct. 24, 30 L. Ed. 284; St. Louis, V. & T. H. R. Co. v. Terre Haute & I. R. Co., 145 U. S. 393, 12 Sup. Ct. 953, 36 L. Ed. 748. It follows, therefore, that the lease by the Indianapolis Company of the Terre Haute & Logansport Railroad, by which a connection was made at Terre Haute with the line of the

Indianapolis Company, and at South Bend with the line of the Michigan Company, and also the lease in question with the Michigan Company, were ultra vires the Indianapolis Company, and are void. These leased lines cannot, therefore, be deemed part of the "line of railway" of the Indianapolis Company. It was consequently not a company whose "line of railway" extended across the state, and was not empowered to execute the guaranty in question. This guaranty expressed for its consideration an absolutely void agreement, incapable of ratification, and notice of which is imputed by the law to every holder of the bonds of the Michigan Company. It is competent for the Indianapolis Company to plead invalidity of the contract, and its own want of power to execute. We do not deem it essential to review the various provisions of the statute of Indiana applicable to the subject which have been called to our attention. They were all considered by the court in Pennsylvania R. Co. v. St. Louis, A. & T. H. R. Co., supra, and the power to lease was denied. The legislation of the state with respect to railways would seem to be sporadic and fragmentary, and not in consonance with a well-defined policy and a regulated system of control of railway corporations. The omission in the legislation of the state of the grant of power to take by lease appears to be inadvertent rather than intentional. We fail to discover any sound reason of public policy which, giving to railway corporations acquiring their property under decrees of courts (1 Burns' Rev. St. Ind. 1894, § 5215) the right to purchase the lines of railway of other railroad companies, withholds that power from other railway companies whose lines have not been acquired through sale upon foreclosure. If a railroad company authorized to consolidate with another company can accomplish that purpose by purchase of the stock of the other company, as an incident to such consolidation (2 Burns' Rev. St. Ind. 1894, § 5215; Hill v. Nisbet, 100 Ind. 341), it is not altogether apparent why a company generally authorized to extend its railway beyond the termini expressed in its charter or articles of organization (2 Burns' Rev. St. Ind. 1894, § 5303), and to own and operate such extended lines, may not accomplish that object by permanent lease of connecting lines, and why the greater should not include the lesser power. But the question seems to be authoritatively settled. The supreme court of the United States has declared the law. We can but follow and obey. The decree is affirmed.

GROSSCUP, Circuit Judge, sat at the hearing, but, by reason of illness and absence, took no part in the decision.