CUMBERLAND TELEPHONE & TELEGRAPH CO. v. CITY OF EVANSVILLE.

(Circuit Court, D. Indiana. December 29, 1903.)

No. 10,262.

1. CORPORATIONS—POWERS MEASURED BY CHARTER.
　　Under the law as settled by the decisions of the Supreme Court of the United States and also of the Supreme Court of Indiana, the powers of a corporation are measured by its charter. It can exercise no power not conferred on it by its charter either expressly or by necessary implication, or granted to it by the Legislature of the state under whose laws it is organized.

**2. SAME—QUASI PUBLIC CORPORATIONS—POWER TO SELL PROPERTY.**

 A quasi public corporation cannot disable itself for the performance of its functions by the sale and transfer of all its property without legislative authority.

**3. TELEPHONE COMPANIES—INDIANA STATUTE.**

 The statute of Indiana (2 Burns' Rev. St. 1901, § 5517 et seq.) authorizing the forming of corporations "for the purpose of establishing, maintaining, and operating telephones, telephone lines, and telephone exchanges," while it confers on a company organized thereunder power to acquire and "hold and convey such real and personal estate as may be proper for the purpose of erecting or maintaining its lines," does not authorize such company to sell and transfer all of its property and franchises, and such a sale is contrary to public policy and void, and cannot be validated by ratification or performance, or by its recognition by the city which granted a franchise to such company to use its streets, so as to become the foundation of any right in the transferee to use such streets.

**4. SAME—RIGHT TO USE STREETS—FEDERAL STATUTE.**

 Act July 24, 1866, c. 230, 14 Stat. 221 (Rev. St. §§ 5263, 5268 [U. S. Comp. St. 1901, pp. 3579, 3581]), granting right of way for telegraph lines over military and post roads on its acceptance by the telegraph company, does not give a telephone company filing its acceptance thereof the right to use the streets of a city for its lines without a grant of such right from the local authorities.

**5. ILLEGAL CONTRACT—COLLATERAL ATTACK.**

 A contract which is illegal, as contrary to public policy, is absolutely void, and may be attacked by any one and in any proceeding in which it is sought to found rights thereon.

**6. MUNICIPAL CORPORATIONS—FRANCHISES FOR USE OF STREETS—TELEPHONE COMPANIES.**

 A right granted by a city for the use of its streets by a telephone company is not only an easement, but a franchise granted in the exercise of powers vested by law in the city to regulate the use of its streets, and is intended to be exercised largely for the public good; and the city has an interest therein which entitles it to question the validity of any transfer or attempted transfer of the same by its grantee.

In Equity. Suit to enjoin defendant city from interfering with the use of its streets by complainant for telephone purposes.

John J. Vertrees, Jas. T. Walker, Wm. L. Granberry, and Andrew J. Clark, for complainant.

Albert W. Funkhouser, Alexander Gilchrist, George A. Cunningham, and Walton M. Wheeler, for defendant.

ANDERSON, District Judge. It is alleged in the bill that prior to December, 1882, the Evansville Telephone Exchange was organized under the laws of the state of Indiana "for the purpose of conducting a telephone business in the city of Evansville, Indiana"; that on December 11, 1882, said Evansville Telephone Exchange made application to the common council of the city of Evansville for a permission or grant to occupy the streets, alleys, and public places in the city in order to erect its poles and string its wires for use in its telephone system, and on December 28, 1882, an ordinance was duly

¶ 4. Rights of telegraph and telephone companies to use of streets, see note to Southern Bell Telephone & Telegraph Co. v. City of Richmond, 44 C. C. A. 155.

passed by said common council granting such right to said telephone exchange, its successors and assigns; that thereupon said telephone exchange, pursuant to such grant, erected and established a telephone system in said city, and on July 1, 1883, had 527 subscribers who were receiving service from said exchange; that on June 30, 1883, complainant purchased of the Evansville Telephone Exchange its telephone plant in the city of Evansville, together with all poles, wires, exchange equipment, and other appliances, and also the right and permission given by the common council of said city to operate said exchange in said city; that complainant immediately took possession of said property, and has been in possession and enjoyment thereof continuously to the present time, and has continuously since, without cessation, operated said exchange under said ordinance; that the passage of the said ordinance of 1882 and its acceptance by the Evansville Telephone Exchange constituted a contract between the city and the Evansville Telephone Exchange, which was duly and properly acquired by complainant, and that complainant thereby acquired vested rights to the use of the streets and alleys of the city of Evansville for the erection and maintenance of its poles and wires used in the operation of its telephone plant in said city, which cannot lawfully be interfered with; that defendant has ordered and directed complainant to remove all telephones furnished by it to the city, and to remove from the streets, alleys, and public places and property of said city all poles, wires, cables, fixtures, and appliances of any kind of complainant which are now in or upon said streets, alleys, public places, and property of said city; and complainant seeks to enjoin the defendant from interfering with the property or business of complainant in said city and from interfering in any manner with its right to erect and maintain its poles and wires in the streets, alleys, and public places of the city, or with its vested rights in said city. The bill is quite lengthy, and contains many other matters besides those recited above, but by it complainant claims the right to remain and do business in the city by virtue of the ordinance granted by said city to said the Evansville Telephone Exchange on December 28, 1882, and by said exchange assigned and transferred to complainant in June, 1883.

The answer, among other things, alleges that the attempted sale and transfer by the Evansville Telephone Exchange to the complainant of all its property of every kind, including its rights and franchises, was illegal and void because it was beyond and outside of the powers granted to said telephone exchange, and contrary to public policy; that, the attempted sale and transfer of all its property being absolutely void, complainant has no right or title to the same by reason of such sale and transfer, and therefore cannot claim the protection of a court of equity for such property.

The Evansville Telephone Exchange was a corporation organized under the act of the Legislature of Indiana which went into effect April 7, 1881. This act will be found in Rev. St. Ind. 1881, pp. 894, 895; Burns' Rev. St. Ind. 1901, vol. 2, § 5517 et seq. In its articles of association the term of its existence was fixed at 50 years. The grant to this company by the ordinance of December 28, 1882, was

unlimited as to time. Complainant's evidence shows that the alleged sale and transfer of the property of the Evansville Telephone Exchange to complainant was of "all of the franchises, rights, and property of every description belonging to the Evansville Telephone Exchange of Evansville, Indiana," and that all the property of said telephone exchange was delivered to complainant pursuant to said sale, and at the time thereof. It appears by the stipulation of the parties hereto that the Evansville Telephone Exchange has had no property and has transacted no telephone business in the city of Evansville since the year 1883.

The Evansville Telephone Exchange was organized for, a public purpose—to establish and maintain a public telephone system for the purpose of furnishing telephone communication between its subscribers. Under the statute authorizing its incorporation it has the right of eminent domain. Its business is of a public character. It depends upon the public for its support, and the public depends upon it for its accommodations. It is a quasi public corporation. It is the settled doctrine of the Supreme Court of the United States that a corporation has such powers only as are expressly or impliedly granted by the statutes under which it is organized.

In Thomas v. Railroad Company, 101 U. S. 71, 81, 25 L. Ed. 950, in answer to the proposition that a corporation may do any act which is not either expressly or impliedly prohibited by its charter, the court said:

"We do not concur in this proposition. We take the general doctrine to be in this country, though there may be exceptional cases and some authorities to the contrary, that the powers of corporations organized under legislative statutes are such, and such only, as those statutes confer. Conceding the rule applicable to all statutes that what is fairly implied is as much granted as what is expressed, it remains that the charter of a corporation is the measure of its powers, and that the enumeration of those powers implies the exclusion of all others."

Reference was again made to the same proposition in Penn. R. R. Co. et al. v. St. Louis, Alton, etc., R. R. Co. et al., 118 U. S. 290, 307, 6 Sup. Ct. 1094, 30 L. Ed. 83, and the repudiation of it in Thomas v. Railroad Company, supra, and the doctrine of that case, were fully approved and confirmed.

In Oregon Ry. Co. v. Oregonian Ry. Co., 130 U. S. 1, 20, 9 Sup. Ct. 409, 411, 32 L. Ed. 837, the Supreme Court again said:

"It may be considered as the established doctrine of this court in regard to the powers of corporations that they are such only as are conferred upon them by the acts of the Legislatures of the several states under which they are organized. * * * A corporation can exercise no power or authority which is not granted to it by the charter under which it exists, or by some other act of the Legislature which granted that charter."

This general and established doctrine has been reiterated in Central Transp. Co. v. Pullman Palace Car Co., 139 U. S. 24, 48, 11 Sup. Ct. 478, 35 L. Ed. 55, and as late as Union Pacific Ry. Co. v. Chicago, etc., Ry., 163 U. S. 564, 16 Sup. Ct. 1173, 41 L. Ed. 265; McCormick v. Market Nat. Bank, 165 U. S. 538, 17 Sup. Ct. 433, 41 L. Ed. 817; California Bank v. Kennedy, 167 U. S. 362, 17 Sup. Ct. 831, 42 L. Ed. 198; De La Vergne Co. v. German Savings Institution, 175 U.

S. 40, 54, 20 Sup. Ct. 20, 44 L. Ed. 66—and asserted in many other cases. First National Bank v. National Exchange Bank, 92 U. S. 122, 128, 23 L. Ed. 679; Citizens' State Bank v. Hawkins, 34 U. S. App. (7th Circuit) 423, 427, 71 Fed. 369, 18 C. C. A. 78; East St. Louis Connecting Ry. Co. v. Jarvis, 92 Fed. 735, 744, 34 C. C. A. 639 (Circuit Court of Appeals, Seventh Circuit); New Albany Water Works v. Louisville Banking Co., 122 Fed. 776, 58 C. C. A. 576 (Circuit Court of Appeals, Seventh Circuit).

It is also the settled doctrine of the Supreme Court of Indiana. In Board of Commissioners of Tippecanoe Co. v. L. M. & B. Railroad Co., 50 Ind. 85, 108, it was stated as follows:

"A corporation is a creature of law. It has no powers except those expressly granted or necessarily implied; and none can be implied except such as are necessary to the exercise and enjoyment of those expressly granted. Powers which are not thus granted or implied are denied."

This doctrine has been fully approved and applied in subsequent cases. It was held in Franklin Nat. Bank et al. v. Whitehead et al., 149 Ind. 560, 568, 49 N. E. 592, 39 L. R. A. 725, 63 Am. St. Rep. 302, that "a corporation possesses only such powers as are expressly given by law, and such implied powers as are necessary to enable it to exercise the powers expressly given"; and in Eel River R. R. v. State, etc., 155 Ind. 433, 457, 57 N. E. 388, 396, the court said:

"It is further said by counsel for appellants that the lease was not prohibited by law, nor wrongful in itself, and that the information contains no averment that public injury resulted from the acts complained of. In answer to this it is sufficient to say that the lease to the competing company was not authorized by any statute; that its execution and the consequent abandonment of its railroad by the Eel River Railroad Co. were against public policy; and that from the facts averred in the information injury to the public may be conclusively presumed."

It was also held by the Supreme Court of the United States to be the doctrine of the Indiana cases and the law of Indiana corporations in Pearce v. Madison & Indianapolis R. R. Co., 21 How. 441, 16 L. Ed. 184, and Penn. R. R. Co. et al. v. St. Louis, Alton, etc., R. R. Co. et al., supra.

The statute under which the Evansville Telephone Exchange was incorporated does not expressly authorize corporations organized under it to sell all their property. Nor is there any implied power granted to do this. The first section authorizes "any number of persons to form themselves into a corporation for the purpose of establishing, maintaining and operating"—not for selling and disposing of —"telephones, telephone lines and telephone exchanges"; and the articles of association of the Evansville Telephone Exchange were prepared pursuant to this authority. There is neither express power given by the statute, nor can there be worked out of it any implied power to do that which will make it impossible for the corporation to do the thing for which it was organized. A quasi public corporation cannot disable itself for the performance of its functions by the sale and transfer of all its property without legislative authority.

It cannot be claimed that the power to sell "all of the franchises, rights, and property of every description belonging to the Evansville

·Telephone Exchange"·is necessary for the conduct·of its business by it; that the power to make a complete surrender and total abandonment of all the means and appliances whereby any business is performed is an essential incident of the power which is vested in a particular corporation to perform it. On the contrary, it was expressly held in Thomas v. ·Railroad Company, supra, that:

"When a corporation like a railroad company has granted to it, by charter, a franchise intended in large measure to be exercised for the public good, the due performance of those functions ·being the consideration of the public ·grant, any contract which disables the corporation from performing those functions, which undertakes, without the consent of the state, to transfer to others the rights and powers conferred by the charter, and to relieve the grantees of the burden which it imposes, is a violation of the contract with the state, and is void as against public policy." Page 83, 101 U. S., 25 L. Ed. 950.

The contract in that case was a lease of the property and franchises of the railroad company for a period of 20 years, which was held null and void because it was unauthorized by the laws of New Jersey, under which the railroad company was incorporated. It was also ·held in Penn. R. R. Co. et al. v. St. Louis, Alton, etc., R. R. Co. et al., supra, that:

·· "Unless specially authorized by its charter, or aided by some other legislative action, a railroad company cannot, by lease or any other contract, turn over to another company, for a long period of time, its road and all its appurtenances, the use of its franchises, and the exercise of its powers; nor can any other railroad company, without similar authority, make a contract to receive and operate such road, franchises, and property of the first corporation; and that such a contract is not among the ordinary powers of a railroad company, and is not to be presumed from the usual grant of powers in a railroad charter." Page 309, 118 U. S., 6 Sup. Ct. 1102, 30 L. Ed. 83.

In that case a lease which an Illinois corporation was expressly authorized by the laws of Illinois to make was invalidated because an Indiana corporation was not authorized by the laws of Indiana to accept it. A petition for rehearing was overruled, notwithstanding the Indiana corporation was authorized by the laws of Indiana to make such contract "for the use of its road as to the board of directors * * * might seem proper" (Penn. R. R. Co. et al. v. St. Louis, Alton, etc., R. R. Co. et al., 118 U. S. 630, 631, 7 Sup. Ct. 24, ·30 L. Ed. 284), and the law of the case was reaffirmed in St. L., Vandalia, etc., R. R. Co. v. Terre Haute & Indianapolis R. R. Co., 145 U. S. 393, 402, 12 Sup. Ct. 953, 36 L. Ed. 748, and fully recognized by the Circuit Court of Appeals for the Seventh Circuit in Central Trust Co. v. Indiana, etc., R. R. Co., 98 Fed. 666, 39 C. C. A. 220.

In Central Transp. Co. v. Pullman Pal. Car Co., supra, the ·Supreme Court, after an exhaustive review of the previous cases, said:

ⵑ "The·clear result of these decisions may be summed·up thus: The charter of a corporation, read in·the light of any general laws which are applicable, is the measure of its powers, and the enumeration of those powers implies the exclusion of all others not fairly incidental. All contracts made by a corporation beyond the scope of those powers are unlawful and void, and no action can be maintained upon them in the courts, and this upon three distinct ·grounds: The obligation of every one contracting with a corporation to take

notice of the legal limits of its powers; the interest of the stockholder not to be subjected to risks which they have never undertaken; and, above all, the interest of the public that the corporation shall not transcend the powers conferred upon it by law. A corporation cannot, without the assent of the Legislature, transfer its franchise to another corporation, and abnegate the performance of the duties to the public imposed upon it by its charter as the consideration for the grant of its franchise. Neither the grant of a franchise to transport passengers nor a general authority to sell and dispose of property empowers the grantee, while it continues to exist as a corporation, to sell or to lease its entire property and franchise to another corporation. These principles apply equally to companies incorporated by special charter from the Legislature and to those formed by articles of association under the general laws." Pages 48, 49, 139 U. S., page 485. 11 Sup. Ct., 35 L. Ed. 55.

See, also, Railway Companies v. Keokuk Bridge Co., 131 U. S. 371, 384, 9 Sup. Ct. 770, 33 L. Ed. 157; McCormick v. Market Nat. Bank, 165 U. S. 549, 17 Sup. Ct. 433, 41 L. Ed. 817; California Bank v. Kennedy, 167 U. S. 368, 17 Sup. Ct. 831, 42 L. Ed. 198.

As was said in Board v. Lafayette, etc., R. R. Co., 50 Ind. 85, 109:

"It [a quasi public corporation] is bound by reciprocal obligations to the state, and owes reciprocal duties to the public. It must not make contracts beyond its chartered powers, or perform acts injurious to the public, or pursue a course in contravention of public policy. It is created, sustained, and protected by the law, and wields powers with which private enterprise cannot compete. It must therefore obey the law, keep within its powers, and pursue in its general course the end and design of its creation."

In Muncie Natural Gas Co. v. City of Muncie, 66 N. E. 436, the Supreme Court of Indiana said:

"Without attempting to cover the whole ground, it may be said that, if a contract is of such a character that, had the corporation at once proceeded to execute it, its act would have been contrary to public policy, or expressly or impliedly prohibited by statute, or would in any degree disable the corporation from the performance of its statutory duties, the undertaking cannot be enforced by either party."

It was insisted by counsel for complainant on the argument that the power to sell was conferred by section 8 of the act under which the telephone exchange was organized. That section is as follows:

"Any telephone company organized under this act shall have power to lease, or attach to other telephone lines or exchanges by lease or purchase." Burns' Rev. St. 1901, § 5524.

But it is evident that the power to "lease" other telephone lines or exchanges and the power to "attach to other telephone lines or exchanges by lease or purchase" does not include the power to sell all its property and franchises to another corporation; nor can the power to sell be necessarily implied from the grant of either of these expressed powers.

The only other section of the act that lends any color of support to complainant's contention is section 7 (Burns' Rev. St. 1901, § 5523), which contains this grant of power:

"Such company * * * shall have power to acquire by purchase or otherwise, and hold and convey, such real and personal estate as may be proper for the purpose of erecting or maintaining its lines of telephone and the appliances and buildings requisite for its business."

The power here granted to "convey" real and personal estate is expressly limited by the words, "as may be proper for the purpose of erecting or maintaining its lines of telephone and the appliances and buildings requisite for its business." This section not only does not authorize the stripping of the corporation of all of its property and franchises, so that it will be disabled to continue its business as a telephone corporation, but clearly restricts the power to the making of such conveyances as may be proper for the purpose of carrying on its business. The whole purpose of the statute is to authorize the corporation to carry on its business; not to go out of business.

In the case of Central Transportation Co. v. Pullman Pal. Car Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55, already cited, it appears that the plaintiff there was organized by filing its certificate under the general laws of Pennsylvania, which authorized the organization of companies for the purpose of carrying on the manufacture of certain articles within the state for a term not exceeding 20 years, and provided that every corporation so formed might by its corporate name purchase, hold, and convey real or personal property "necessary or convenient to enable said company to carry on the business or operations named in such certificate." Page 25, 139 U. S., page 479, 11 Sup. Ct., 35 L. Ed. 55. It further appeared that:

"By a special act of the Legislature of Pennsylvania of February 9, 1870, c. 94, entitled 'An act to extend the charter of the Central Transportation Company, to empower them to lease their property and increase their capital stock,' the plaintiff's charter was extended for ninety-nine years from its expiration; and 'said company are hereby empowered to enter into contracts with corporations of this or any other state for the leasing or hiring or transfer to them, or any of them, of their railway cars and other personal property,' as well as 'to increase their present capital stock two hundred thousand dollars.'" Page 26, 139 U. S., page 479, 11 Sup. Ct., 35 L. Ed. 55.

Thus it will be seen that in that case the special act of the Legislature of Pennsylvania granted broader powers than those granted by section 8 of the act in question, and that the original act under which the plaintiff in that case was organized contained provisions authorizing the corporation to convey real or personal property in almost the identical language and for the same purposes as section 7 of the act now under consideration. Yet both were insufficient to authorize the contract in that case, and it was held to be ultra vires, and contrary to public policy, and therefore "wholly void."

The Evansville Telephone Exchange was authorized and empowered to establish and maintain its telephone system, not to sell it; to accomplish the object of its incorporation, not to defeat it; to acquire the means to enable it to perform its duties to the public as a corporation, not to disable itself from performing those duties. The attempted sale of all of its property and franchises was ultra vires, and contrary to public policy, and therefore null and void.

The act of transfer being null and void, it was and is incapable of ratification. In Central Transp. Co. v. Pullman Co., supra, it is said:

"A contract of a corporation which is ultra vires in the proper sense—that is to say, outside the object of its creation as defined by the law of its organization, and therefore beyond the powers conferred upon it by the Legisla-

ture—is not voidable only, but wholly void, and of no legal effect. The objection to the contract is not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it."

The acts of the city in consenting to the transfer, or in treating and dealing with complainant thereafter, cannot affect the question. New Albany Water Works v. Louisville Banking Co., 122 Fed. 776, 58 C. C. A. 576. No rights can be acquired through a transaction that is wholly void and of no legal effect.

Complainant, in its printed brief, states the issues as follows:

"The claim of the plaintiff in the bill to continue its business in the city of Evansville is rested upon the 1882 ordinance, which it purchased, by assignment, from the Evansville Telephone Exchange in June, 1883. The defense of the city in its answer is rested upon two grounds: (1) That the plaintiff did not acquire under its purchase the rights given to the Evansville Telephone Exchange under the ordinance of 1882, because the Evansville Telephone Exchange was a quasi public corporation, owing duties to the public, and could not, therefore, divest itself of those duties by assigning all of its property to another company. (2) That the plaintiff has abandoned its rights under the 1882 ordinance, and has accepted, in lieu thereof, the 1887 ordinance, which, having been repealed, leaves the plaintiff without any rights whatever in the city; and, acting upon this theory, the council of the city of Evansville, on August 18, 1902, adopted the ordinance repealing the 1887 ordinance, and requiring the plaintiff to take down and remove all of its poles and wires from the streets and alleys within ninety days from its passage and publication."

The conclusion reached on the first defense makes the consideration of the second defense unnecessary. Complainant denies that it abandoned the ordinance of 1882, and denies that it accepted the ordinance of 1887 in lieu of that of 1882. It claims no rights whatever under the ordinance of 1887.

In its bill complainant claims the right to maintain its poles and wires upon the streets and alleys of the city by virtue of the act of Congress of July 24, 1866, c. 230, 14 Stat. 221, entitled "An act to aid in the construction of telegraph lines and to secure to the government the use of the same for postal, military and other purposes," and its acceptance thereof, filed with the Postmaster General of the United States, on December 30, 1897. Nothing was said upon the argument and nothing is contained in complainant's briefs in support of this contention. The decision of the Supreme Court of the United States in the case of Richmond v. Southern Bell Telephone & Telegraph Company, 174 U. S. 761, 19 Sup. Ct. 778, 43 L. Ed. 1162, settles this question against the complainant. See, also, City of Toledo v. Western Union Tel. Co., 107 Fed. 10, 46 C. C. A. 111, 52 L. R. A. 730.

I am therefore of the opinion that complainant has no rights under the assignment from the Evansville Telephone Exchange of its permit to do business in the city of Evansville; that it has no rights under the ordinance of 1882 which it can ask this court to protect; that the attempted repeal of that ordinance does not interfere with any rights which complainant has in the city, and that complainant cannot complain of its repeal; and that the act of Congress of July

24, 1866, above mentioned, gives complainant no right to maintain a telephone system in the city.

It follows that the bill must be dismissed for want of equity, and it is so ordered.

## On Petition for a Rehearing.

### (January 22, 1904.)

ANDERSON, District Judge. The complainant has filed a petition for a rehearing of this cause, and in support thereof has filed a brief which warrants some attention. It is correctly stated in this brief that "the only piece of property involved in this suit is the 'easement' created under the 1882 ordinance," and assigned to complainant, and that "the sole property right in suit is this easement." The question now is, did the complainant, by the sale alleged and proved in this case, acquire a right in or title to the easement which it can assert in a court of justice? In their brief counsel for complainant treat the contract upon which they base complainant's title to the "easement" as ultra vires the Evansville Telephone Exchange, and in that respect void. But this view is too narrow. The contract was void also because it was contrary to public policy. In Thomas v. Railroad Company, 101 U. S. 71, 83, 25 L. Ed. 950, the court said:

"There is another principle of equal importance and equally conclusive against the validity of this contract, which, if not coming exactly within the doctrine of ultra vires, as we have just discussed it, shows very clearly that the railroad company was without the power to make such a contract. That principle is that where a corporation like a railroad company has granted to it by charter a franchise intended in large measure to be exercised for the public good, the due performance of those functions being the consideration of the public grant, any contract which disables the corporation from performing those functions which undertakes, without the consent of the state, to transfer to others the rights and powers conferred by the charter, and to relieve the grantees of the burden which it imposes, is a violation of the contract with the state, and is void as against public policy."

In Central Transportation Company v. Pullman's Company, 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55, it is said:

"The necessary conclusion from these premises is that the contract sued on was unlawful and void, because it was beyond the powers conferred upon the plaintiff by the Legislature, and because it involved an abandonment by the plaintiff of its duty to the public."

In Pullman's Car Co. v. Transportation Co., 171 U. S. 138, 149, 18 Sup. Ct. 808, 43 L. Ed. 108, the court said:

"The so-called lease mentioned in this case has been already pronounced illegal and void by this court. 139 U. S. 24 [11 Sup. Ct. 478, 35 L. Ed. 55]. The contract or lease was held to be unlawful and void because it was beyond the powers conferred upon the Central Company by the Legislature, and because it involved an abandonment by that company of its duty to the public."

Complainant's counsel confuse the words "void" and "voidable." Such confusion has frequently occurred in statutes and decisions of courts, but in the cases cited in the original opinion herein the Supreme Court of the United States used the word "void" in its strict and proper sense; and in the case of Central Transportation Co. v. Pullman's Co., supra, in the paragraph quoted in the original opinion, the court held the contract in that case to be "not voidable only, but

wholly void, and of no legal effect." "Contracts to do acts that are illegal, criminal, or contrary to public policy * * * are absolutely void." Am. & Eng. Ency. of Law, vol. 28, p. 477.

In Anderson v. Roberts, 18 Johns. 527, 9 Am. Dec. 235, it is said:

"A thing is void which is done against law at the very time of doing it, and when no person is bound by the act; but a thing is voidable which is done by a person who ought not to have done it, but who nevertheless cannot avoid it himself after it is done."

In Thomas v. Railroad Co., supra, the court not only holds that the company entering into the contract in that case had the right to repudiate the contract, but that "it was the duty of the company to rescind or abandon it at the earliest moment." And this because the contract was against the law; forbidden by public policy.

I think the contract which is the foundation of complainant's alleged title is absolutely void. "Strictly speaking, 'void' means without legal efficacy; ineffectual to bind parties or to convey or support a right." 28 Am. & Eng. Ency. of Law, 473. No right can be founded on an absolutely void act. "Whatever may be avoided, may, in good sense, to this purpose, be called void; and this use of the word 'void' is not uncommon in the language of statutes and of courts. But in regard to the consequences to third persons the distinction is highly important, because nothing can be founded on what is absolutely void, whereas from those which are only voidable fair titles may flow." Somes v. Brewer, 2 Pick. (Mass.) 184, 13 Am. Dec. 406. Complainant is in this position: It claims title by virtue of a contract which is absolutely void because in violation of positive law, and it asks this court to recognize and protect a title thus acquired. "No court of justice can, in its nature, be made the handmaid of iniquity." U. S. Bank v. Owens, 2 Pet. 538, 7 L. Ed. 508. Lord Mansfield, in Holman v. Johnson, Cowp. 341, stated the ground on which courts proceed in such cases as follows:

"The principle of public policy is this: 'Ex dolo malo non oritur actio.' No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If, from the plaintiff's own stating or otherwise, the cause of action appear to arise ex turpi causa, or the transgression of a positive law of this country, then the court says he has no right to be assisted. It is upon that ground the court goes, not for the sake of the defendant, but because they will not lend their aid to such a plaintiff."

In Gibbs v. Baltimore Gas Co., 130 U. S. 396, 410, 9 Sup. Ct. 553, 32 L. Ed. 979, the court quotes from Bishop on Contracts:

"The law cannot recognize as valid any undertaking to do what fundamental doctrine or legal rule directly forbids. Nor can it give effect to any agreement the making whereof was an act violating law."

In Pullman's Car Co. v. Transportation Co., 171 U. S. 138, 151, 18 Sup. Ct. 808, 43 L. Ed. 108, after citing with approval the case of Holman v. Johnson, 1 Cowp. 341, and many other cases, the court said:

"They are substantially unanimous in expressing the view that in no way and through no channels, directly or indirectly, will the courts allow an action to be maintained for the recovery of property delivered under an illegal contract, where, in order to maintain such recovery, it is necessary to have recourse to that contract. The right of recovery must rest upon a disaffirmance

of the contract, and it is permitted only because of the desire of the courts to do justice as far as possible to the party who has made payment or delivered property under a void agreement, and which in justice he ought to recover. But courts will not, in such endeavor, permit any recovery which will weaken the rule founded upon the principles of public policy already noticed."

How can complainant claim the protection of this court for its alleged title to this easement without having recourse to the contract by which it claims to have acquired that title? To grant the relief sought by complainant is to both recognize and enforce a contract which the law declares to be absolutely void; void because of want of power to make it, and void because contrary to public policy.

It is insisted that the city of Evansville occupies the position of a third person or stranger to this contract, and therefore it cannot raise the question as to its validity. As the authorities cited above show, if this contract is absolutely void, it is void as to everybody, and is a nullity whenever or wherever it is set up. The right asserted here by complainant is the right to use the streets, alleys, and public places of the city. The regulation and control of this use is by law vested in the city. The complainant is asserting the right to this use against the city, which now has control of the right, unless it has granted it to a corporation which has legally assigned it to complainant. It would be strange, indeed, if in such case the city could not question the validity of such assignment.

But it is the duty of courts to refuse recognition to an illegal contract whenever and however its illegality appears. A court is, in the due administration of justice, bound to refuse its aid to enforce an illegal contract, even if its invalidity be not pleaded. Oscanyan v. Arms Co., 103 U. S. 261, 26 L. Ed. 539. A party to the contract cannot waive its invalidity. In Hall v. Coppell, 7 Wall. 542, 559, 19 L. Ed. 244, Mr. Justice Swayne, speaking for the court, said:

"The instruction given to the jury that, if the contract was illegal, the illegality had been waived by the reconventional demand of the defendants, was founded upon a misconception of the law. In such cases there can be no waiver. The defense is allowed, not for the sake of the defendant, but of the law itself. The principle is indispensable to the purity of its administration. It will not enforce what it has forbidden and denounced. The maxim, 'Ex dolo malo non oritur actio,' is limited by no such qualification. The proposition to the contrary strikes us as hardly worthy of serious refutation. Whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case. No consent of the defendant can neutralize its effect. A stipulation in the most solemn form to waive the objection would be tainted with the vice of the original contract, and, void for the same reasons. Wherever the contamination reaches, it destroys. The principle to be extracted from all the cases is that the law will not lend its support to a claim founded upon its violation."

In order to establish its claim to the right sought to be protected in this case, complainant alleged, and it was necessary for it to prove, the contract out of which its alleged right springs. In this way, and in this way alone, can it establish the right alleged in the bill. In McMullen v. Hoffman, 174 U. S. 639, 654, 19 Sup. Ct. 839, 43 L. Ed. 1117, the Supreme Court said:

"The authorities, from the earliest time to the present, unanimously hold that no court will lend its assistance in any way towards carrying out the

terms of an illegal contract. In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged rights directly springing from such contract."

The petition to rehear is overruled.